# WILLIAM A. QUYNN *vs.* GEO. W. CARROLL and DE ROSEY CARROLL, Adm'rs *d. b. n., c. t. a.* of MICHAEL B. CARROLL.

An entry was made in the books of a deceased party in his own handwriting, settling an account against the plaintiff by a *credit* in these words: "By amount of *services rendered on account*, $398.53," and a *receipt* was given by the plaintiff to the executrix of the deceased for $307.86, "*on account of services rendered*" the deceased "*in his life time*," which was found among the papers of the executrix after her death. *Held.*

That this entry and receipt, made and given within three years, were sufficient to remove the bar of the statute of limitations to the plaintiff's account for *services rendered as clerk and agent* for the deceased, in a suit therefor against the administrators *de bonis non*, proof of the rendition and value of such services having been given.

An acknowledgment or promise to remove the bar of the statute need not specify any particular amount, nor need the claimant exhibit at the time the evidence, or state the precise nature or amount of his claim, these being facts to be found by the jury.

Though payments "*on account*," will not *per se* revive the debt claimed on a running account where the party paying was never furnished with a copy, nor otherwise knew the entries which the account contained, yet if the debtor has full knowledge of the account, a part payment will remove the bar of the statute.

APPEAL from the Circuit Court for Prince Georges county.

*Assumpsit* brought by the appellant, on the 14th of October 1853, against the appellees as the administrators *de bonis non* of Michael B. Carroll, to recover the amount of an account for services alleged to have been rendered by the plaintiff as clerk and agent for the deceased, for the period of eight years and eight months, at $500 *per annum*, commencing on the 1st of January 1843 and ending on the 31st of August 1851, with interest, making in all $5313.33⅓. Pleas, *non assumpsit* and *limitations*.

*1st Exception.* The plaintiff proved by competent witnesses, that from 1843 to 1848, Michael B. Carroll was extensively engaged in the mercantile business, and from the latter year to his death, on the 31st of August 1851, was largely engaged in farming and in buying tobacco and grain on his own account, and on commission; that the plaintiff was his confiden-

tial clerk and agent during this period, and attended to the whole of his private business, and that the value of these services was not less than from $500 to $1000 *per annum*. And then to remove the bar of the statute of limitations offered in evidence:

1st. An account on the books of the deceased against the plaintiff for merchandize sold and delivered to him, commencing on the 14th of September 1846, and closing on the 21st of January 1851, amounting to the sum of $398.53, and settled with the following credit: "1851 January 21st by amount of services rendered on account $398.53," (Signed,) "*M. B. Carroll,*" and proved the handwriting of said Carroll to this credit. The defendants in the progress of the trial, offered in evidence the books of said Carroll, containing the above account against the plaintiff, and claimed as against him a credit for the amount of $398.53 paid, as of the 20th of January 1851, by Carroll, on account of services rendered.

2nd. The following receipt of the plaintiff to Jane M. Carroll, executrix. "1853 May 11th, received of Jane M. Carroll, executrix, of M. B. Carroll, three hundred and seven dollars and eighty-six cents, on account of services rendered said M. B. Carroll, in his life time," (signed,) "*Wm. A. Quynn,*" and proved that this receipt was found, after the death of Mrs. Carroll, among her valuable papers, by her executors, who in passing their account after her death, as executrix of said Carroll, claimed and received a credit therefor, in the orphans court.

3rd. The testimony of *Dr. J. M. S. McCubbin,* who proved that he was present at a conversation held in 1853, before the institution of this suit, between *one of the defendants* and the plaintiff, wherein the plaintiff expressed his fears, that the said defendant would be induced or influenced to plead the statute of limitations, to which said defendant replied, that time would not induce him to plead limitations against a just account, it being their intention to pay all the just debts of their brother, the said M. B. Carroll; witness then observed, if Mr. Quynn (the plaintiff) puts his account in proper form, proves it, and satisfies you that it is just you

will pay it, and the said defendant replied affirmatively; witness does not profess to say, that Mr. Carroll literally used the words attributed to him, but they were substantially his language; witness' own language in his summing up he is certain is literal.

The defendants then prayed the court to instruct the jury, that unless they are satisfied from the evidence, that M. B. Carroll in his life time, or his executors since his death, within three years next before the institution of this suit, promised to pay the plaintiff's claim or admitted its correctness, then the plaintiff is not entitled to recover except for services rendered within three years before the institution of this suit. This instruction the court *(Crain, J.)* refused to give, but instructed them as stated in the opinion of this court. To giving this instruction the plaintiff excepted.

*2nd Exception.* The plaintiff then further to support his case, and remove the bar of the statute of limitations, offered to read in evidence a deposition of Miss S. M. Worthington, taken under a commission, having first proved that she had died before the trial. In this deposition the witness states, that she had a conversation with M. B. Carroll about three weeks before his death, on the subject of his indebtedness to the plaintiff, in which he said, that the next money he received he meant to pay Quynn, who wanted it badly enough; that Quynn had been a very faithful clerk to him; that said Carroll further said at the same time, "Quynn has had very little from me, I know, poor fellow, he wants it, and I owe him a large amount; the next money I receive I must pay some of it to Quinn, and liquidate the debt by degrees as well as I can, I cannot pay it all at once."

The record shows, that this deposition was taken under a special order of court, passed on the application of the plaintiff, on the 14th of November 1854, permitting it to be taken "before Edward W. Belt, a commissioner appointed by this court, to be used as evidence in the trial of 'this case,' upon giving at least *three days' notice* of the time and place of taking such deposition, such deposition to be used in the contingency provided for by the act of Assembly." The return of the

commissioner shows, that the deposition was taken on the 18th of November 1854, in the presence of the counsel for the plaintiff; the commissioner having, on the day on which the order was passed, given written notice to the counsel of the defendants, of the time and place of taking the same. It was further proved, that Belt was one of three commissioners appointed by order of court "to perpetuate testimony under the act of 1828, ch. 165, with power to either of them to act, upon taking the oath prescribed by that act;" that on the passage of the order appointing these commissioners, the clerk of the court administered to Belt, in open court, the oath of his office in the words of the act of 1828, ch. 165, prescribing the same, and filed on the day of the date thereof in the rough bundle of papers in the clerk's office, his (the clerk's) certificate of qualification, where it has remained ever since, and which was not otherwise recorded.

The defendants objected to the admissibility of this deposition so taken, because it was not taken in conformity with the act of 1828, ch. 165; and the 43rd rule of the court, which they offered in evidence. This rule adopted "for the government of parties to suits in this court, who shall hereafter proceed to take depositions for the purpose of perpetuating testimony of witnesses under the provisions of the act of 1828, ch. 165, and the supplement thereto," requires "the party designing to take depositions as aforesaid, to give *two weeks' notice*" in writing to the adverse party, or his counsel, of the time and place, &c.

The court sustained the objection and refused to permit the deposition to be read, and to this ruling the plaintiff excepted.

*3rd Exception.* The defendants then prayed the court to instruct the jury, that if they find from the evidence, that any payment was made by the executrix of M. B. Carroll, such payment must be applied towards the satisfaction of the services of the plaintiff for three years next before the commencement of this suit, if they find any such services were rendered; provided they further find from the evidence, that neither Mrs. Carroll, as executrix of M. B. Carroll, nor the plaintiff, made any specific application of such payment. This prayer the court granted and the plaintiff excepted.

*4th Exception.* The defendants further prayed the court to instruct the jury, that if they find from the evidence that the payments made by M. B. Carroll in his life time, or his executrix, or the defendants as administrators, within three years next before the commencement of this suit, to the plaintiff, amounted to more than the value of the plaintiff's services for the same period, then their verdict must be for the defendants. This instruction the court granted with the modification, "that the payment of M. B. Carroll, in his lifetime, to the plaintiff, on the 20th of January 1851, must be restricted to services previously rendered, and not to the future services of the plaintiff, because said payments had been applied to anterior services with the consent of the plaintiff and M. B. Carroll, in his life time." To this ruling the plaintiff excepted.

The verdict and judgment were in favor of the plaintiff for $138.47 and costs, and he appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and MASON, J.

*C. C. Magruder* and *John M. S. Causin* for the appellant, argued:

1st. That the ruling of the court below in the first exception was erroneous, because the *facts* presented a case for the consideration of the *jury*, not *the court.* It was the province of the jury to draw inferences from the evidence offered. Wherever evidence rests partly in writing and partly in parol, and the writing is *ambiguous,* the whole is for the *jury.* 4 *Philip's Ev.*, 516, 517, *note* 295. 2 *Greenlf. on Ev.*, secs. 442, 445. *Breese*, 171, *Mellick vs. De Seelhorst.* 2 *Mass.*, 222, *Cogswell vs. Dolliver.* 1 *Penn. Rep.*, 385, *Sidwell vs. Evans.* 11 *Wheat.*, 75, *Etting vs. Bank of U. S.* 3 *Gill*, 286, *Isaac vs. Williams.* 2 *McCord*, 420, *Gibson vs. Peebles.* 17 *Johns.*, 182, *Roseboom vs. Billington.* 6 *Gill*, 85, *Guy vs. Tams.* 4 *H. & J.*, 357, *Allstan vs. Contee.* 11 *G. & J.*, 216, *Beltzhoover vs. Yewell.* 2 *G. & J.*, 404, *Davis vs. Barney.* 5 *Do.*, 499, *Kent vs. Wilkinson.* 5 *Md. Rep.*, 550, *Tyson vs. Shuecy.* 9 *Do.*, 63, *Peterson vs. Ellicott.*

2 *Pick.*, 371, *Bangs vs. Hall.* 4 *Do.*, 112, *Whitney vs. Bigelow.* 8 *Eng. C. L. Rep.*, 318, *Frost vs. Bengough.* 38 *Do.*, 83, *Bucket vs. Church.* 43 *Do.*, 870, *Gardner vs. M'Mahon.* 1 *Sergt. & Rawle*, 178, *Brown vs. Campbell.* 14 *Do.*, 330, *Overton vs. Tracey.* 12 *Do.*, 136, *Watson vs. Blaine.* 5 *Binney*, 503, *Wharf vs. Howell.*

2nd. That the entry by M. B. Carroll, of date the 21st of January 1851, "*By amount of services rendered on account*, $398.53," referred to the services *continuously* rendered by Quynn as his agent, *antecedent* to such entry in Carroll's books, and took the case out of the statute, or, at least, was evidence of *mutual accounts*. 2 *Greenlf. on Ev.*, sec. 441. 4 *Pick.*, 112, *Whitney vs. Bigelow.* 2 *Yeates*, 105, *Stiles vs. Donaldson.* 2 *Pick.*, 583, *Hunt vs. Bridgham.* 25 *Eng. C. L. Rep.*, 208, *Clark vs. Hooper.* 2 *Mass.*, 222. 9 *Wend.*, 128, *Chamberlin vs. Cuyler.* 7 *Do.*, 323, *Kimball vs. Brown.* 6 *Cowen*, 195, *Tucker vs. Ives.* 2 *McCord*, 420. 2 *Vermont*, 148, *Hutchinson vs. Pratt. Ibid.*, 369, *Wood vs. Barney.* 4 *Greenlf's Rep.*, 339, *Davis vs. Smith.* 11 *G. & J.*, 216. 6 *Gill*, 86, 87. 9 *Do.*, 63, *Peterson vs. Ellicott.*

3rd. That the *receipt* given to Mrs. Carroll, the executrix, and the admissions of *one of the defendants*, as administrator, were sufficient evidence from which the jury could infer an admission of indebtedness. It was equivalent to saying, prove your debt and I will pay it. 4 *H. & J.*, 530, *Chapman vs. Dixon.* 1 *H. & G.*, 216, *Oliver vs. Gray.* 7 *Alabama*, 598, *Newhouse & Co., vs. Redwood.* 12 *B. Monroe*, 409, *Northcut vs. Wilkinson.* 16 *Mass.*, 431, *Emerson vs. Thompson.* 8 *Do.*, 133, *Baxter vs. Penniman.* 15 *Do.*, 374, *Sullivan vs. Holker.* 15 *Johns.*, 4, *Johnson vs. Beardslee.* 10 *G. & J.*, 63, *Lamar vs. Manro.* 2 *H. & J.*, 307, *Poe vs. Conway.* 5 *Md. Rep.*, 387, *Mitchell vs. Sellman.* 5 *G. & J.*, 499, *Kent vs. Wilkinson.* 3 *Gill*, 484, *Dent vs. Dent.* 8 *G. & J.*, 135, *Sothoron vs. Hardy.*

4th. That the admission by *one of two joint administrators* is sufficient to take the case out of the operation of the statute. 4 *Monroe*, 36, *Hord's Adm'r vs. Lee, et al.* 12 *B. Monroe*, 409, *Northcut vs. Wilkinson. Angel on Lim.*, 296. 4 *Cowen*,

494, *Hammon vs. Huntley.* 5 *J. J. Marshall,* 257, *Head's Exc'r vs. Manners' Adm'r.* 2 *Monroe,* 131, *Hord's Adm'r vs. Lee, et al.* 15 *Johns.,* 4, *Johnson vs. Beardslee.* 19 *Wend.,* 493, *Deyo's Exc'rs vs. Jones' Exc'rs.* 3 *Pick.,* 291, *White vs. Hale.* 15 *Sergt. & Rawle,* 232, *Scull vs. Wallace.* 16 *Mass.,* 429, *Emerson vs. Thompson.* Contrary decisions have been made in 12 *Mees. & Wels.,* 509, *Scholey vs. Walton;* 3 *Alabama,* 599, *Caruthers, et al., vs. Mardis' Adm'rs,* and 5 *Wend.,* 559, *Forsyth vs. Ganson:* but in England the powers of executors are different, and are derived solely from the will; each has a distinct existence and is not responsible for the *devastavit* of the other. *Toller on Exc'rs,* 429, 430. 2 *Wms. on Exc'rs,* 1659. Whereas in this State each is responsible for the *devastavit* of the other, unless *separate bonds* are given, and they derive their authority from the grant of letters by the court. 6 *G. & J.,* 291, *Clarke & Wife, vs. State, use of Williams.* 2 *Do.,* 226, *Watkins' Adm'rs vs. State, use of Shaw.* 6 *Md. Rep.,* 216, *Mitchell vs. Williamson.* See, also, 4 *Harrington,* 457, *Lank vs. Horsey's Exc'rs.* The assumption of one of two joint administrators is binding on both. One may *pay a debt,* and the power to *pay* includes the power to *acknowledge.*

5th. That the evidence taken under the commission should have been allowed to go to the jury; for we insist:—1st, that the commissioner was duly qualified; 2nd, that the filing of his qualification was sufficient record; 3rd, if not, it was the fault of the clerk over which the plaintiff had no control, and by which he is not to be prejudiced; 4th, that the commission was duly executed under the *special order* of the court, and is not within the provisions of the 43rd rule of court; and 5th, if there was any error in taking this evidence, we were led into it by the *special order* of the court, from the passing of which the defendants did not *appeal,* and, therefore, cannot object to it now. See the *Acts of* 1779, *ch.* 8, *sec.* 6, and 1828, *ch.* 165. 8 *Md. Rep.,* 94, *State, use of Sprigg, vs. Jones.* 7 *G. & J.,* 264, *Young vs. The State.* 2 *H. & J.,* 273, *Howard vs. Moale.* 3 *Do.,* 508, *Steuart vs. Mason.* 1 *Gill,* 82, *Mitchell vs. Mitchell.*

6th. That the court, in its ruling in the 3rd and 4th exceptions, took from the jury the proper construction of the payment made by Mrs. Carroll, and forced them to apply it to services between the 14th of October 1850, three years before institution of suit, and the 31st of August 1851, the time of Carroll's death, without evidence it was so designed by either party, and against the rational inference from the terms of the receipt. It is the right of the *creditor* to apply the payments on omission of the debtor to do so. 1 *H. & J.*, 754, *Gwinn vs. Whitaker.* 4 *Do.*, 351, *Allstan vs. Contee.* 6 *Do.*, 246, *Martin vs. Mechanics Bank.* 4 *G. & J.*, 361, *Mitchell vs. Dall.* 35 *Eng. C. L. Rep.*, 178, *Mills vs. Fowkes.*

*Alex. B. Hagner* and *Thomas G. Pratt* for the appellees, argued:

1st. That an acknowledgment, to remove the bar of the statute, must be *equivalent* to an express or *necessarily* implied promise to pay the *account sued on* in this case. 1 *Gill*, 181, *Duvall vs. Peach.* 4 *G. & J.*, 522, *Frey vs. Kirk.* 7 *Gill*, 98, *Ellicott vs. Nichols.* 4 *Gill*, 208, *Brookes vs. Chesley.* 8 *Md. Rep.*, 379, *Stockett vs. Sasscer.* 10 *Watts*, 172, *Magee vs. Magee.* 19 *Wend.*, 493, *Deyo's Exc'rs vs. Jones' Ex'crs.* 9 *Barr.*, 412, *Laforge vs. Jayne.* 8 *Cranch*, 74, *Clementson vs. Williams.* 1 *Pet.*, 362, *Bell vs. Morrison.* 2 *Cons. Rep.*, *S. C.*, 767, *Ciples vs. Alexander.*

2nd. That the credit by M. B. Carroll upon his account in his own books against Quynn, and the receipt of Quynn to Mrs. Carroll, executrix of M. B. Carroll, were clearly insufficient to prove a promise, express or implied, to pay *the account*, for the recovery of which this *suit is brought*. 11 *G. & J.*, 215, *Beltzhoover vs. Yewell.* 8 *Grattan*, 130, *Bell vs. Crawford.* The entry on the account simply *liquidates* the debt of *Quynn*, and does not *admit* that Carroll *owed Quynn any thing*; it is not an acknowledgment of a *subsisting indebtedness.* Quynn's account was never *exhibited* to Carroll or to the executors. The payment must refer to the *particular account* and show that a *larger amount was due.* 6 *Mees. & Wels.*, 824; *Waugh vs. Cope.* As to the idea of *mutual*

*accounts*, it is only an enlargement of the exceptions of the statute, as between *merchant and merchant*, and has no application to such a case as this. 12 *Pet.*, 300, *Toland vs. Sprague.* The statute of *James* excepts such cases out of its operation, but our statute, differing in this respect, applies the exception only to *non-resident merchants.* Besides, such a defence as this should have been set up in the *replication*, which has not been done. As to the *receipt:* it must show that Mrs. Carroll, by taking it, admitted the balance of the debt *to be due*, and this is not done by this receipt.

3rd. That the testimony of Dr. McCubbin does not furnish evidence of the acknowledgment of a subsisting indebtedness by the defendants, and of a promise on their part, express or implied, to pay the plaintiff's account. It must be such a promise as would sustain an action on the *promise itself.* 10 *Watts*, 178, *Magee vs. Magee.* 1 *Pet.*, 360, *Bell vs. Morrison.* 15 *Maine*, 363, *Oakes vs. Mitchell.* Where there is a *conditional* promise or acknowledgment, the condition must be shown to have been complied with. 13 *Eng. C. L. Rep.*, 273, *Tanner vs. Smart.* 5 *G. & J.*, 499, *Kent vs. Wilkinson.* 2 *Comp. & Mees.*, 459, *Edmunds vs. Downes.* 1 *Robinson's Pr.*, 538. 1 *Denio*, 247, *Tompkins vs. Brown.*

4th. That this testimony was properly decided to be insufficient, because even the *promise* of one of two or more administrators to pay a debt of their intestate, barred by limitations, would not remove the bar of the statute as against the other administrators. This principle is so settled: In ENGLAND:— 21 *Eng. C. L. Rep.*, 478, *Tullock vs. Dunn.* 12 *Mees. & Wels.*, 509, *Scholey vs. Walton.* In the SUPREME COURT OF THE UNITED STATES:—12 *Wheat.*, 567, *Thompson vs. Peter.* In NEW YORK:—5 *Hill*, 239, *Cayuga Bank vs. Bennett.* 5 *Wend*, 561, *Forsyth vs. Ganson.* 14 *Do.*, 97, *McIntire vs. Morris' Adm'rs.* 4 *Cowen*, 493, *Hammon vs. Huntley.* 4 *Barbour*, 535, *Lane vs. Doty.* In ALABAMA:—3 *Ala.*, 599, *Caruthers vs. Mardis.* 24 *Do.*, 474, *Pitts vs. Wootten.* In MAINE:—15 *Maine*, 360, *Oakes vs. Mitchell.* 35 *Do.*, 364, *Bunker vs. Athearn.* In CONNECTICUT:—7 *Conn.*, 172, *Peck vs. Botsford.* In PENNSYLVANIA:—1 *Whart.*, 66, *Fritz vs.*

*Thomas.* 7 *Watts,* 420, *Reynolds vs. Hamilton.* 5 *Barr.,* 225, *Forney vs. Benedict.* 2 *Jones,* 64., *Steel vs. Steel.* In VIRGINIA:—3 *Call.,* 248, *Henderson vs. Foote.* In SOUTH CAROLINA:—2 *Const. Rep.,* 767, *Ciples vs. Alexander.* 2 *Strobhart,* 353, *Haselden vs. Whitesides.* There is no reported case in Maryland definitively settling this proposition. The question was raised but not decided in *Kent's Adm'rs vs. Wilkinson,* 5 *G. & J.,* 499. It is supposed, however, that the question was decided by the former Court of Appeals, in the case of *Ducatel & Carrere, Exc'rs of Mesonnier vs. Oliver's Exc'rs, June Term,* 1834. If a *judgment* against one administrator does not bind the co-administrator, it would seem to follow that a *promise* should not. 12 *G. & J.,* 366, *Gardiner & Bowling, vs. Hardey & Simms.* 7 *H. & J.,* 73, *James vs. Lawrence.*

5th. That it was the province of the court to decide as to the *sufficiency* of the testimony to remove the bar of the statute; and that the court properly decided, that if all the evidence be assumed to be true it was insufficient for that purpose. 1 *H. & G.,* 219, *Oliver vs. Gray.* 1 *Pet.,* 362, 364. 8 *Md. Rep.,* 374, *Stockett, Adm'r of Locke, vs. Sasscer.* 1 *Robinson's Pr.,* 522.

6th. That the testimony under the commission was properly rejected; because the act of 1828, ch. 165, secs. 1, 2, requires that the proof authorised to be taken under it shall be taken "after due notice to the other party, or his attorney, *agreeably to such rule* as shall be made by said courts respectively," and because the standing rule of the court prescribing the manner of taking depositions under this act directs *two weeks' notice* to be given. The act of Assembly and the rule of court were not complied with in any particular. The rules of court are the law of the court which must govern its action. 2 *H. & G.,* 79, *Wall vs. Wall.* 11 *G. & J.,* 92, *Dunbar vs. Conway.*

7th. The third and fourth exceptions involve the question, whether a payment made by a debtor without directions as to its application, and up to the time of the trial *unapplied* by the creditor, should be applied to a debt barred by limitations, or to the debt unaffected by the statute? and we insist, that in the absence of application by either party the court was right

in directing its application most advantageous for the debtor. 1 *H. & J.*, 754, *Gwinn vs. Whitaker.* 2 *Do.*, 402, *Dorsey vs. Gassaway.* 4 *Barr.*, 323, *Morgan's Adm'rs vs. Walton.*

LE GRAND, C. J., delivered the opinion of this court.

This action was brought by the appellant to recover of the appellees, as administrators *de bonis non* of Michael B. Carroll, an amount claimed as due for services alleged to have been rendered, as clerk and agent for the period of eight years and eight months, at $500 per year, commencing on the 1st day of January 1843 and ending on the 31st day of August 1851, amounting to $4333.33 principal, and $980 interest, making in all $5313.33.

The writ issued on the 14th day of October 1853. In bar of the plaintiff's right to recover, the defendants pleaded the statute of limitations. The plaintiff gave evidence to show he had been in the employ of Michael B. Carroll, during the time for which he claimed compensation. To remove the bar of the statute of limitations, he offered in evidence an account on the books of the deceased, and in his hand-writing, against the plaintiff, for merchandize sold and delivered to the plaintiff, commencing on the 14th day of September 1846 and closing on the 21st day of January 1851, amounting to the sum of $398.53, with a credit, in the hand-writing of Carroll, at the foot of the account, in these words: *"By amount of services rendered on account $398.53, M. B. Carroll."* He also gave in evidence a receipt of his own, which was found after her death, among the papers of Mrs. Carroll, the executrix of M. B. Carroll. It is in these words: *"1853, May 11th. Received of June M. Carroll, executrix of M. B. Carroll, three hundred and seven dollars and eighty-six cents, on account of services rendered said M. B. Carroll in his life time."* There was other testimony offered, but it is not necessary it should be now noticed. Admitting, *ex gratia argumenti*, that the testimony of Miss Worthington was inadmissible, and that of Dr. McCubbin insufficient to bind both of the administrators, we are yet of opinion the court erred in giving the following instruction, to wit: *"That the evi-*

Quynn *vs.* Carroll's Adm'rs.

dence given in this cause was insufficient, if believed by the jury, to remove the bar of the statute of limitations relied on by the defendants in this cause, and that the plaintiff was only entitled to recover for the three years, immediately preceding the day of the impetration of the writ original in this cause.''

Conceding the testimony of Miss Worthington to be out of the case, and the insufficiency of that of Dr. McCubbin, the question then is, are the entry on the books of M. B. Carroll, in his own hand-writing, and the receipt of the plaintiff found among the papers of Mrs. Carroll, executrix of M. B. Carroll, sufficient to remove the bar of the statute? The statute of limitations has ever been a fruitful source of doubt and discussion, and the decisions in regard to it, both in this country and England, various and contradictory. This being so, wherever it is found that the question presented in the particular case for the time under consideration, has been settled by the adjudications of the appellate court of this State, such adjudications ought to be followed, whatever may have been the decisions elsewhere. In the case now before us, the plaintiff gave evidence of the performance of services and of their value. It was for the jury to pronounce on the credit of the witnesses who gave this evidence. In the case of *Turner and Peterson, Exc'rs. of Peterson vs. Ellicott,* 9 *Md.,* 52, this court held, that in this State it is not necessary the acknowledgment or promise to remove the bar of the statute should specify any particular amount, nor need the claimant exhibit at the time, the evidence, or state the precise nature or amount of the claim, these being facts to be found by the jury according to the evidence in the case. The same doctrine was held in *Guy vs. Tams,* 6 *Gill,* 82. In the case under consideration, the only claim alluded to, is that for services alleged to have been rendered by the plaintiff to M. B. Carroll, as his clerk and agent, and it was therefore proper, under the decisions to which we have adverted, for the jury to find the acknowledgment, if any, had reference to such claim and to none other, there being none other referred to in the testimony.

This being so, we are to inquire what is the meaning of the entry of M. B. Carroll, and of the receipt of the plaintiff given to the executrix?

Whilst in the case of *Beltzhoover vs. Yewell*, 11 *Gill &amp; Johns.*, 212, the court held, that payments "on account" did not *per se* revive the debt claimed on a running account, where the party making the payments had never been furnished with a copy, or been otherwise put in possession of a knowledge of the entries which it contained, yet it did hold, that if the debtor had full knowledge of the account, a part payment would remove the bar of the statute. The case before us differs from that of *Beltzhoover vs. Yewell*, in this: in the latter the debtor Beltzhoover had no knowledge of the items of charge against him, whilst in the case at bar, Carroll kept his account against the plaintiff, and settled it by a credit of services rendered by the plaintiff. If the witnesses are to be believed, he knew the plaintiff had acted as his clerk and agent, and recognized such services by the very words of the credit. In the case, however, of the receipt given to the executrix all doubt is removed. She expressly makes the payment *"on account of services rendered said M. B. Carroll in his life time."* She admits the service and makes a payment on account of them; what those services were and their value was a question for the jury.

In this view of the case, it is unnecessary we should inquire into the propriety of the ruling of the court, in regard to the admissibility of the testimony of Miss Worthington; or of the application of payments; or of the power of one administrator by his promise or acknowledgment to bind his co-administrator. If the jury believe the services were performed, and that the executrix acknowledged that fact, and made a payment on account of them, then the bar of the statute was removed. We reverse the Circuit court and remand the case.

*Judgment reversed and procedendo awarded.*