APRIL TERM 1866. 575

McCann et al., adm'rs, vs. Sloan and Caldwell.

*Judgment affirmed.*

(Decided July 19th, 1866.)

---

DANIEL McCANN ET AL., ADMRS., &c., vs. SLOAN & CALDWELL.

LIMITATIONS,—WHEN BARRED BY PROMISE OR ACKNOWLEDGMENT OF ONE OF TWO JOINT ADMINISTRATORS: EVIDENCE.—In an action against joint administrators to recover a claim alleged to have been due by their intestate, a promise or acknowledgment by one of them is sufficient to remove the bar of the Statute of Limitation as against both, provided the existence of the claim has been established by proof *aliunde,* especially where such promise or acknowledgment is made before the statute has operated upon the claim.

Such promise or acknowledgment cannot, however, be relied upon for the purpose of establishing the existence of the debt as against the administrator, who is not a party to the promise—proof *aliunde* being indispensable for that purpose.

PROCEDENDO.—Where the judgment below has been for the plaintiffs, and is reversed on the defendants' appeals, and it appears from the plaintiffs' exceptions contained in the records, that the ruling of the Court below thereby excepted to was correct, there is no ground for granting a *procedendo.*

APPEAL from the Court of Common Pleas of Baltimore city:

This action was brought by the appellees against the appellants, as administrators of James H. Nussear, on the 18th

of June, 1863. The declaration contained the· common money counts, a count for work done, and also a count on a promissory note. The defendants pleaded, 1st, *non-assumpsit;* 2nd, *non-assumpsit infra tres annos;* 3rd, *actio non accrevit infra tres annos;* and 4th, *plene administravit.* At the trial several exceptions were taken on both sides,—those of the appellants only need be stated.

*First Exception.* The plaintiffs proved the grant of letters of administration on Nussear's estate to the defendants, on the 14th of November, 1859; and then offered in evidence this certificate from the Register of Wills, dated August 20th, 1861:

"It is hereby certified, that it appears from the docket of accounts against the estates of deceased persons, being one of the records of this office, that an account against the estate of James H. Nussear, deceased, amounting to $374.43, and due to Sloan and Caldwell, (which is said to be lost or mislaid,) was regularly passed and recorded in the words and figures following, to wit: "Date, 1859, No. 29; name of the deceased—James H. Nussear; names of the creditors—Sloan and Caldwell; character of the claims—account; amount of claims—$374.43." The Court admitted this certificate to go to the jury for the purpose only of proving notice to the defendants, that such an account had passed the Orphans' Court. At the time of offering this evidence, the plaintiffs' attorney stated he had served a notice on the defendants' attorney, directed to the defendant, Daniel McCann, requiring him to produce at the trial the cause of action, being the original account passed by the Orphans' Court, and delivered to him by the plaintiffs, and that he had failed to produce it. The Court decided this notice was served in time.

The plaintiffs then offered the bond of the defendants, given as administrators, for the purpose of showing their joint liability, and the Court allowed the paper to be read to the jury, subject to exceptions to be raised on their prayers.

APRIL TERM 1866. 577

McCann et al., adm'rs, vs. Sloan & Caldwell.

The plaintiffs then undertook to prove their claim, and to lay a foundation for the introduction of the plaintiffs' book, and to prove the handwriting of the entries therein by Featherstone, their clerk, at the date of the entries; they offered proof by Ray, that Featherstone was salesman and book-keeper for the plaintiffs in 1859, and that he understood he was dead; that he had heard from all his friends and acquaintances, that he had died in some place in Virginia; heard a year ago that he was dead; saw him frequently, and missed him in April, 1861. They further offered to prove by Martin, that he knew Featherstone, that he left Baltimore in April 1861, that he told witness he was going South, and he missed him in April, 1861; he went South, and witness heard from his friends and relations that he was killed in the Confederate service; heard so from Featherstone's uncle. The Court decided this evidence sufficient to authorise the plaintiffs to introduce evidence, that the entries in their books were in the handwriting of Featherstone, their clerk, and to this ruling the defendants excepted.

*2d Exception.* [The plaintiffs then made an ineffectual effort to prove their claim by the introduction of their books, as stated in their two exceptions. These need not be referred to further than to state, that the rulings of the Court expressly threw out all the evidence in support of the plaintiffs' claim, and up to this stage of the trial there was no proof, whatever, of any claim on their part.]

The plaintiffs then offered in evidence a promissory note, proved to have been executed by the intestate in their favor, dated January 29th, 1859, payable at one day after date, for $176.75. They then proved by Martin, that he knew McCann, one of the defendants, and that witness, in company with Caldwell, one of the plaintiffs, met McCann on the 25th of March, 1861, on the street, when Caldwell asked him, (McCann,) why he had not paid the plaintiffs' claim; to which

McCann answered, he had not collected sufficient assets ; witness then asked the plaintiff why he did not cite the defendant before the Orphans' Court; the defendant said he had been cited before the Court, and that the plaintiff would have got his claim long before, if he had not done so ; that the claim was perfectly good; that he got six months from the Court, and could get six months more.    On cross-examination, he said he recollected the conversation, and the date of it, because he took a memorandum thereof at the time, which he produced, and is as follows :

" On the 25th day of March, 1861, Mr. S. R. Caldwell and myself met Dan. McCann, corner of Gay and Second st.; Mr. C. asked why the Nussear balance was not paid. Mr. McC. said he had not collected sufficient yet. I asked Mr. C., why he did not cite him to Court ; Mr. McC. said he had done so, and had he not, he would have paid him his money before this, the claim was good ; that he, McC., had got six months and could get six months more of the Court."

To all of which evidence the defendants objected as being inadmissible to remove the bar of the Statute of Limitations as against the co-administratrix, Mrs. Nussear, or to prove the original indebtedness of the deceased to the plaintiffs; which objections the Court overruled, and the defendants excepted.

*3d Exception.* The plaintiffs then offered in evidence a certified copy of the first administration account of the defendants, as administrators, passed in the Orphans' Court on the 27th of August, 1861, and showing a balance due the estate of $3,727.20, for the purpose of proving assets in the hands of the defendants; to which the defendants objected, and insisted that a full record from the Orphans' Court must be tendered. The Court overruled the objection, and allowed the account to go to the jury, and to this ruling the defendants excepted.

*4th Exception.* The plaintiffs then proved by O'Neill, that

he called upon Mrs. Nussear, one of the defendants, in reference to the plaintiffs' claim, about December, 1863, and she referred him to McCann, and said she knew nothing about it, that it was under his charge.

Two prayers were offered by the plaintiffs, and four by the defendants. The Court rejected the prayers on both sides, and gave the instruction as set forth in the opinion of this Court. The defendants excepted to the rejection of their prayers and to the instruction given by the Court.

The case was tried in January, 1864, and the jury rendered a verdict in favor of the plaintiffs for $459.43, and the defendants moved for a new trial, and in arrest of judgment, for the reasons stated in the record. The Court overruled both motions, and the defendants appealed.

The cause was argued before Bowie, C. J., and Bartol, Goldsborough, Cochran, and Weisel, J.

*O. Miller,* for the appellants:

1st. There is error in the Court's instruction to the jury in this, that the jury were told by it, in effect, that the admission or acknowledgment of *one* of two administrators was sufficient to remove the bar of the Statute of Limitations pleaded in this case. *Kent vs. Wilkinson's Adm'rs,* 5 *G. & J.,* 497. *Gardiner & Bowling vs. Hardy & Sims,* 12 *G. & J.,* 384. *Hesson vs. Hesson,* 14 *Md. Rep.,* 8. *Caruthers vs. Mardis,* 3 *Ala.,* 509. *Forsyth vs. Granson,* 5 *Wend.,* 561. *Atkins vs. Tredgold,* 2 *Barn. & Cress.,* 23. *Tullock vs. Dunn,* 21 *Eng. C. L. Rep.,* 478. *Connoway vs. Spicer,* 5 *Harrington,* 425. *McCullough vs. Dawes,* 22 *Eng. C. L. Rep.,* 385. *Scholey vs. Walton,* 12 *Mees & Wels.,* 509. *Cayuga Bank vs. Bennett et al.,* 5 *Hill,* 336. *Lane vs. Doty,* 4 *Barb.,* 535. 14 *Wend.,* 93. 24 *Ala.,* 474, 475.

2nd. The prayer is also wrong, inasmuch as it assumes that the acknowledgment testified to by the witness, Martin, was

not only sufficient to remove the bar of the statute, but also to establish the existence of the debt without any proof thereof *aliunde.* See same authorities as above, and also *Wood vs. Howell*, 5 *H. & J.*, 60. *Miller vs. Dorsey*, 9 *Md. Rep.*, 323. *Quynn vs. Carroll*, 10 *Md. Rep.*, 208. *Seighman vs. Marshall*, 17 *Md. Rep.*, 569. *Oakes vs. Mitchell*, 15 *Md. Rep.*, 360. 7 *Conn. Rep.*, 172. 2. *Const. Rep.*, 767, (*S. C.*) *Chapman vs. Dixon*, 4 *H. & J.*, 527.

3rd. Under the plea of *plene administravit*, the *onus* of proving assets is on the plaintiff, and he must produce the record of the proceedings in the Orphans' Court. A mere copy of an account passed on the 27th of August, 1861, and which purports on its face to be the *first* and not the *final* account, without any other evidence, is not sufficient proof of assets in a suit commenced in June, 1863. The prayer was therefore erroneous in assuming there was sufficient proof in the case from which the jury could find assets in the hands of the defendants. *Seighman vs. Marshall*, 17 *Md. Rep.*, 569.

4th. The prayer was also erroneous in instructing the jury that the plaintiffs were entitled to recover without stating *on what account.* The note was in evidence, but limitation was a clear bar to that, as there was no evidence whatever that it formed part of the account passed by the Orphans' Court. By the instruction, the jury were left at large to include in their verdict this note as well as the account.

5th. For the same reason as stated in the preceding points, there was error in the Court's ruling in the second and third exceptions, which in fact raise only the same questions which are raised on the prayers.

*A. H. Hobbs*, for the appellees :

1. It is clear that the promise of one of two or more joint administrators will remove the bar of the Statute of Limitations, and especially will it so operate if the promise is made before the statute applies. 7 *Gill*, 102. 2 *Smith's Lead,*

*Ca.,* 387, 388, (*5th Ed.*)   4 *Cow.*, 494, 495.   2 *Monroe,* 131. 4 *Id.*, 37, 38.   5 *J. J. Marshall*, 257.   12 *B. Monroe,* 409. 15 *John.*, 4.   19 *Wend.*, 493.   16 *Mass.*, 429.

2. It is submitted, that the principles enunciated by these authorities, if traced to their legal conclusion, will be efficient to establish the original demand. When a claim is barred by limitations, the bar may be removed by a new promise within three years before the institution of suit.   When the statute operates upon a claim, it is presumed, in legal contemplation, to be extinguished ; if it is a joint demand, the joint liability is severed, destroyed. A new promise, however, "reanimates the old promise, and imparts vitality to the remedy."   In the case of a single bill, for instance, over twelve years standing, the bar may be removed by a new promise, or by any recognition of the existence of the claim, and the law would raise the *assumpsit ;* but, in that case, the action would be brought on the new promise, and the single bill would be used merely as an inducement to the action.   The new promise does, in effect, therefore, establish the original demand. The same extent of power, the same measure of authority, it is thought, is requisite in both cases. And it is further submitted, that co-administrators, acting separately, have greater powers than one of two or more joint contractors, one co-administrator represents the whole estate, and can, it is conceded, do many things conclusively binding on the estate he thus represents; whereas, joint contractors must all concur. Co-administrators, like joint tenants, are possessed "*per my et per tout.*"

3. There can be no reasonable doubt that the admission of an administrator is evidence sufficient, not only to remove the bar of the Statute of Limitations, but to establish the original demand. 1 *H. & J.*, 109. 4 *H. & J.*, 529, 530. 21 *Pick.*, 243, 245.   The admission of a trustee is binding on him.   3 *Gill*, 484, and 9 *Gill*, 220.

4. Having shown the effect of the declarations of a sole

administrator on the estate of his intestate, let us see what difference, if any there is, when there are two or more administrators. Joint or "co-executors are regarded in law as an individual person, and by consequence, the acts of any of them, in respect to the administration of the effects, are deemed the acts of all, for they have a joint and entire authority over the whole property." "Hence, a release of a debt by one of several executors is valid, and shall bind the rest." 2 *G. & J.*, 226. (And the same law applies to co-administrators. 2 *Wms. on Executors*, 854.) 6 *Md. Rep.*, 210. 1 *Md. Rep.*, 190, 191 and 195, and 10 *Md. Rep.*, 247. 8 *Texas Rep.*, 336. 35 *Maine*, 280, 8 *Blackf.*, 172. 4 *Harrington*, 457. 4 *H. & McH.*, 391.

The admission of a sole executor or administrator is sufficient to establish the original demand, and as co-executors or administrators, however numerous, are but one person in law, each representing the whole estate, does it not legitimately and logically follow that the admission of one of the co-executors has the same binding force and efficacy; I liken it to the case of partners, the partnership being established, the declaration of any one of the firm is evidence against all.

And the argument is strengthened when the fact is McCann made the admission before the statute had operated upon and extinguished the claim; he thereby created no new liability, but simply recognized an existing demand. *Ellicott vs. Nichols*, 7 *Gill*, 102, 103, 104,

Again, his declarations are evidence, because he was the "acting administrator," and Mrs. Nussear, the co-defendant, when applied to by witness, O'Neill, in December, 1863, admitted she knew nothing about the claim, referred him to McCann, and said the whole business was under McCann's charge. He was then authorized to speak, not only for himself, but as her recognized agent, and as well as by virtue of his "entire authority over the whole property."

5. But suppose what is above stated does not receive the

approbation of the Court, still the declarations of McCann are evidence and entitle the appellees to an affirmance as to him. 1 *Greenleaf Ev.*, secs. 171, 172, 174. 1 *Ch. Pl.*, 52. *App. vs. Driesback,* 2 *Rawle,* 301.

6. The administration account offered in evidence was competent and proper to show assets in the hands of the administrators; it was the first and only account passed by the Orphans' Court, and was at least *prima facie* evidence that the appellants had the sum of $2,951.90 in their hands due the estate of the deceased. No suitor is bound to show more than a *prima facie* case till his opponent exhibits countervailing evidence. 4 *Md. Rep.*, 173. *Gould on Pl.*, ch. 3, sec. 193. See also, 2 *Greenleaf Ev.*, sec. 347. Furthermore, McCann, in the conversation in the presence of the witness, Martin, admitted there were sufficient assets to pay and satisfy the claim. Here the appellees close the argument of the case as presented by the record, and respectfully ask that the judgment be affirmed.

Now, although the judgment of the Court of Common Pleas was in favor of the appellees, which prevented their appealing; yet, as it is possible, this Court may reverse the judgment of the Court below, it is thought best to bring to the notice of the Court the evidence offered by the appellees of the handwriting, original entries, and subsequent death of the book-keeper and salesmen, referred to in the record. I think I am justified in asking this under the decision in *Long & Byrn vs. Crawford*, 18 *Md. Rep.*, 226. The evidence offered ought to have been submitted to the jury, leaving it to them to say whether the entries therein referred to were "original entries," in the proper handwriting of the book-keeper, and whether the book-keeper subsequently died. It was a question of fact, legitimate and proper, for the consideration of the jury. And it is further insisted, that by presumption of law, the entries were original in the absence of all evidence to the contrary.

Should the Court, therefore, determine to reverse the judg-

ment, it is hoped it will also pass upon the appellees' first, second and third exceptions, as it may prevent a second appeal.

BARTOL, J., delivered the opinion of this Court.

This case turns mainly upon the decision of the question raised by the appellants' second exception, as to the admissibility of the evidence of the witness, Martin, whereby it was sought to charge the defendants by proof of the acknowledgment of McCann made to the plaintiffs. The same question is also presented by the Court's instruction to the jury contained in the appellants' third exception.

The suit is against the appellants as administrators of James H. Nussear, deceased, to recover a sum of money alleged to be due to the appellees, from their intestate in his life time. Limitations were pleaded, and the evidence was offered for the two-fold object of establishing the existence of the debt, and of removing the bar of the statute.

The Court below admitted the evidence and instructed the jury: "If they find from the evidence that the defendants, Daniel McCann and Susan Nussear, have been duly appointed administrators of the estate of James H. Nussear, deceased; that the plaintiffs exhibited an account against the estate of the deceased amounting to the sum of $374.43, which was duly passed by the Orphans' Court of Baltimore city, and that one of the plaintiffs, on the 25th of March, 1861, had the conversation with Daniel McCann, one of the defendants, detailed by the witness, Martin, and if the jury shall further find from the evidence, that the defendants are in possession of assets, to be administered, sufficient in hand, that then the plaintiffs are entitled to recover."

It appears from the proof that the appellees qualified as administrators on the 14th of November, 1859. On the 29th of November, 1859, an account was passed by the Orphans' Court, of the appellees against James H. Nussear, deceased,

for $374.43, and a memorandum or record thereof was made by the Register, under Code, Art. 93, sec 114, in a book kept for the purpose. It is plain, from the certificate of the Register, that the 29th of November, 1859, was the date when the account was passed by the Orphans' Court. What the date of the account was when due, or what were the items composing it, does not appear; it was not produced at the trial. The registry of the claim was evidence of notice of the same to the administrators, and as such the certificate was properly admitted. *Seighman vs. Marshall, Adm'r,* 17 *Md. Rep.,* 569. But it was not evidence to establish the claim as against the appellants in this suit.

There was proof given of a promissory note signed by James H. Nussear, the defendants' intestate, dated January 29th, 1859, for $176.75, in favor of the appellees; but there was no evidence that this note formed any part of the account and claim exhibited to, and passed by, the Orphans' Court, or that the administrators had any notice thereof. In the conversation between the appellee, Caldwell, and McCann, testified to by the witness, Martin, no allusion was made to the note. That conversation must, therefore, be understood as relating only to the account, that being the only claim exhibited to the Orphans' Court, or of which the defendants appear to have had notice. The note was clearly barred by limitations, and there being no evidence of any promise or acknowledgment with regard to it, the plaintiffs were not entitled to recover thereon; and we do not understand the instruction of the Court below as comprehending the promissory note.

We now proceed to consider the question presented, so far as relates to the account. The evidence of the entries in the plaintiffs' books having been rejected, there was no proof in the cause to establish the account, except the declarations of McCann, testified to by Martin. We are correct, therefore, in saying that those declarations were offered for the double

purpose of establishing the claim, and of taking it out of the operation of the Statute of Limitations. Are they competent evidence for that purpose?

In *Forbes vs. Perrie's Admr.*, 1 *H. & J.*, 109, which was a suit against a sole administrator, it was held by the General Court that a count against an administrator as such, was supported by evidence of his promise to pay a debt of the intestate.

In *Chapman vs. Dixon's Admx.*, 4 *H & J.*, 527, and *Quinn vs. Carroll's Admrs. d. b. n.*, 10 *Md. Rep.*, 197, it was decided that a promise or acknowledgment by a sole executor or administrator, will take a case out of the statute.

But the question whether, if there are two or more administrators, the promise of one will take the case out of the statute, seems not to have been decided in Maryland. In *Kent's Adm'r vs. Wilkinson*, 5 *G. & J.*, 498, 499, the question is stated in the opinion of the Court, but not decided. And in *Quynn vs. Carroll*, 10 *Md. Rep.*, 197, though the question was elaborately argued at the bar, the Court expressed no opinion upon it, (see page 209.) When we look outside of the State, there is considerable conflict of authority. In *Tullock vs. Dunn*, 1 *Ry. & M.*, 416, (21 *Eng. C. L. Rep.*, 478,) it was ruled by ABBOTT, C. J., that an express promise by one executor would not take a case out of the statute as against the others, and this decision was followed in *Scholey vs. Walton*, 12 *Mees and Wels.*, 509, in a note on page 514: several American cases are referred to, and many more are cited in the argument of the appellee in *Quynn vs. Carroll*, 10 *Md. Rep.*, 205, 206. Unquestionably, the current of decisions in this country is in accordance with the ruling in *Tullock vs. Dunn*.

In *Hammon vs. Huntley*, 4 *Cowen*, 494, the contrary is asserted; but in the *Cayuga Bank vs. Bennett*, 5 *Hill*, 236, before the same Court, the expression of WOODWORTH, J. in

*Hammon vs. Huntley,* 4 *Cowen,* is called "*obiter;*" see, also, *McIntire vs. Morris' Admrs.,* 4 *Wend.,* 90; *Lane vs. Doty,* 4 *Barbour,* 535; *Peck vs. Botsford,* 7 *Conn.,* 172, and *Pitts vs. Wooters' Exrs.,* 24 *Ala.,* 474, where this question is considered. The cases in all the States are, however, not in harmony. The contrary was held in *Emerson vs. Thompson,* 16 *Mass.,* 429, and in *Hords' Adm'rs vs. Lee & others,* 4 *Monroe,* (*Ken.,*) 36.

We concur in what was said by Judge Cowen, in 5 *Hill,* 240, " that the reasoning of Judge Mills, in the case cited from 4 *Monroe,* seems to raise a serious doubt whether denying the force of personal representatives, or any one of several, to admit or to act in respect to any matter which concerns the estate, be not equivalent to saying that they are mere naked agents. They are clearly a good deal more. It has often been held that they are trustees with more than the ordinary powers incident to that character, for one may sell or convert the whole estate without the consent of the others." See *Bell vs. Hilliary,* 1 *Md. Rep.,* 186, &c., *Mitchell vs. Williamson,* 6 *Md. Rep.,* 210, and *Gardener & Bowling vs. Hardy & Simms,* 12 *G. & J.,* 365, where the powers of executors and administrators are considered.

Although there is much conflict of authority on the point, and it must be conceded, that the current of decisions both in England and in this country is the other way, we perceive no good reason why a promise or acknowledgment by one executor or administrator, where there are several, should not operate to remove the bar of the Statute of Limitations, especially when made before the statute has operated upon the claim.

But we are clearly of opinion that this can only apply where the claim is established by proof *aliunde,* and that such promise or acknowledgment cannot be relied on for the purpose of establishing the existence of the debt as against the other administrators.

McCann et al., adm'rs, *vs.* Sloan & Caldwell.

The law seems to us to be correctly stated in 2 *Smith's Lead. Cases,* (*5th Ed.*) 388, note, where it is said: " Executors have joint authority and power touching debts due by the testator, and if you prove *aliunde,* that the claim sued upon was a debt of the testator, you lay a ground for admitting the acknowledgment of one to be evidence against the other; thus, if you prove that it was a debt due by the testator, an acknowledgment by one would take the case out of the Statute of Limitations against both, and against all. *Johnson vs. Beardslee,* 15 *Johns.,* 3. But for the purpose of proving the fact whence the joint interest and power arise, viz: for proving that it was a debt due by the testator, the confession of one is not evidence in a suit against both. *Hammon vs. Huntley,* 4 *Cowen,* 493.

This must be understood, however, with reference to what has been before said, as to whether the acknowledgment has been made before or after the statute has operated. In the latter case it would seem a promise or acknowledgment of one of several co-administrators would not bind the others. See *Ellicott vs. Nichols,* 7 *Gill,* 102.

In this case, the declarations of McCann, being offered for the purpose of establishing the existence of the debt, were inadmissible, and for that reason there was error in the Court's instruction. The judgment will therefore be reversed.

We are of opinion that the Court below ruled correctly in excluding the evidence of entries in the plaintiffs' book, contained in the first and second exceptions of the plaintiffs, for the reason that it did not appear from the evidence that the same was a book of original entries; there is, therefore, no ground for a *procedendo.*

*Judgment reversed.*

(Decided July 19th, 1866.)