Mr. Justice Hagner
delivered the opinion of the court.
The question for decision is fully presented by the bill of exceptions, as follows:
“On the trial of this cause, and to maintain the issue on its part joined, the plaintiff gave evidence to the jury tending to prove that one Alfred Jones died intestate in June, 1877, indebted to the plaintiff $81 for rent of a storeroom, and that letters of administration upon the estate of said Jones were issued to defendant July 11, 1877; that on July 30,1877, one P. S. Smith, clerk and agent of plaintiff, sent by mail to the defendant a duly proven statement of account of said debt, and demanded payment thereof, and that defendant promised to make payment within the year. And plaintiff further produced in evidence to the jury the records of the Orphans’ Court of said District in the matter of the accounts of said administratrix, whereby it appeared that said defendant, on the 22d day of September, 1882, filed her first account as administratrix, and thereby charged herself with the sum of $710.13, ás proceeds of sale, &c., and *164 claimed credit and allowance for $419.35 on account of payment of expenses of said administration and of debts of said estate, and, also, the further credit of $274.40, claimed in the words following:
“By amount reserved to pay following claims:
James M. Tenney, balance; vou. 18........... $129 49
W. H. Tenney & Sons, vou. 19..............; 28 97
John A. Baker, vou. 20...................... 15 10
Washington Market Co., vou. 21....... $81 00
Interest on same from Aug. 11, 1878, to Sept. 11, 1882, 4 years 1 mo., at 6 per cent......................... 19 84
- 100 84
“ Which said account was verified by the oath of the defendant attached thereto. And plaintiff also gave evidence tending to prove that said account was duly passed and approved by said Orphans’ Court, September 22, 1882 ; and, further, that the “Voucher 21 ” mentioned in said account, and returned therewith is the same statement of account which was delivered to said Emma A. Beckley by said P: S. Smith in July, 1877.
“ And here the plaintiff rested.
“And thereupon the justice presiding, at the request of the defendant, instructed the jury that the evidence so given was insufficient to overcome the plea of the Statute of Limitations ; and that their verdict must be for the defendant, to which instruction the plaintiff, by its attorneys, then and there and before the giving of the verdict, duly excepted, &G.”
The plaintiff insisted that the personal representative may remove the bar of the statute by acknowledgments or promises after his appointment, and that the evidence adduced in the court below in the case at bar was sufficient for that purpose.
On the other hand the contention of the defendant was, that, however unequivocal the acknowledgment by an executor or administrator may be, or however ex *165 plicit may be his promise to pay a debt of the deceased barred by the Statute of Limitations, yet neither can suffice to remove the bar of the statute if it shall be afterwards pleaded by the personal representative in a suit at law brought against him by the creditor; and he relied upon the case of Thompson vs. Peter and Johns, Administrators, d. b. n. of Peter, 12 Wheat., 565, as sustaining this position to its full extent. Of course if this be so, it disposes of the present case at once; as it would have ended the case in 12th Wheaton, without the necessity of examining the evidence at all.
But we do not think that decision should be so regarded.
In that case the verdict below was for the plaintiff by consent, subject to the opinion of the Circuit Court “ whether the evidence which is stated in a case made by the parties be sufficient to be left to the jury, as evidence- of a subsequent acknowledgment .competent to take the case out of the Statute of Limitations.” The Circuit Court gave judgment for the defendants, and the Supreme Court declared, “the court is of opinion that the Circuit Court decided rightly.” Examining the evidence, the opinion showed plainly that the declarations of the administrator there relied on were wholly insufficient for the purpose. As this was the only inquiry then before the Supreme Court, we are authorized to consider that the expressions in the opinion were used only with reference to the question actually before it; and were not designed to apply to all possible acknowledgments or promises of a personal representative, under any circumstances whatever.
It is true the Chief Justice uses the words, “declarations against him (the personal representative) have never been held to take the promise of a testator or intestate out of the act. Indeed the contrary has been held.”
This language was used in 1821. If the learned Chief Justice intended to say that such declarations as were then under examination had never been held sufficient to remove the bar of the statute, the observation was certainly just. But the General Court of the State of Maryland, *166 as far back as 1801 (in tbe case of Forbes vs. Perrie’s Administrator, 1 H. & J., 109), in construing the act of 1715, ch. 23, which is our Statute of Limitations (and which was before the court in 12th Wheaton) had decided otherwise ; and admitted the acknowledgment of an administrator as sufficient to remove the bar of the statute.
A number of other cases may be referred to, decided before 1827, where the efficacy of an acknowledgment or promise of the personal representative had been recognized. Among others is Tulloch vs. Dunn and another, executors of Hanley (1 Ryan & Moody, 416), decided in 1826. There both the defendants had, within the six years, acknowledged the plaintiff’s demand to be due; but one of them had expressly promised that it should be paid. Chief Justice Abbott admitted that an express promise by both the executors would remove the bar of the statute and entitle the plaintiff to recover, but held that a more acknowledgment by both, or a promise by one only, would not be sufficient.
So in Johnson, Administrator, vs. Beardsley et al., 15 Johns., 3, decided in 1818. Within six years before suit was brought, two of the defendants, who were also executors of the original debtor, admitted the demand and promised to pay the debt. The court said the acknowledgment of one joint debtor of the existence of the debt is sufficient to take the case out of the statute, and added: “The court see no reason why that principle should not apply to the case of executors, heirs and devisees as well as to every other case.”
Undoubtedly it had never been held that such light and careless declarations as were relied on to remove the bar in the case in 12th Wheaton, were adequate; and the decision agreed entirely with the rulings of the Court of Appeals of Virginia in several cases many years before 1827, where similar declarations were held insufficient (Henderson vs. Foote, 3 Call, 251; Lewis vs. Bacon, 3 Hen. & Munf., 105; Epes vs. Dudley, 5 Rand, 437); though in those cases it seemed to be plainly admitted that there might be declarations by an executor which would be adequate.
*167 There has been no decision since that time by the Supreme Court upon the precise point, except the case of Johnson vs. Waters, 111 U. S., 640, where it was held that the executor or administrator of an estate can by acknowledgment suspend the prescription of the statute; but the ruling was based upon the Louisiana law and is entitled to no wider application.
The decisions in the different States upon the general question seem to be quite at variance. In Maryland where our statute originated, the distinct acknowledgment or promise by the executor or administrator has always been held sufficient. Such have been the rulings in Maine, New York, Virginia, Kentucky, New Hampshire, New Jersey and Massachusetts. In several of those States an acknowledgment without an explicit promise has been admitted for the purpose. In Pennsylvania, Connecticut, Mississippi, Texas and Indiana it seems to have been held otherwise. Angelí, in his treatise, assembles the authorities, § 261 et seq., but expresses no decided opinion on the subject; while Wood, in his recent treatise, inclines to the opinion that the weight of the decisions is adverse to the power of the administrator to remove the bar of the statute by acknowledgment or promise.
The question now before us, however, is as to the sufficiency of the evidence in the hill of exceptions to remove the bar of the statute, and that involves the inquiry as to the legal effect of the proving and passing of the plaintiff's claim by the Orphans' Court, and of the retention by the administrator, on settlement of his administration account in 1882, of a sum of money to pay the plaintiff’s claim with interest to that date, in accordance with the provisions of the act of 1798, ch. 101, of Maryland, which forms almost the entire testamentary system in force in this District. •
We are spared the necessity of stating at length in our own words the opinion of the court upon these items of evidence, by our adoption here of the language of the Court of Appeals of Maryland in the case of George W. Pole vs. James T. Simmons and Charles S. Simmons, ad *168 ministrator of Richard E. Simmons, 49 Md., 14, where these identical questions, with others, were fully examined. In that case the court was construing the provisions of the same Statute of Limitations, as well as the same testamentary statute, that are in force in this jurisdiction.
The facts were as follows: On the 20th of August, 1875, Pole declared, in the common counts, against the administrators of Simmons, for money payable by their intestate in his lifetime. The defendants pleaded that the decedent never promised, never was indebted as alleged, and actio non accredit infra tres annos.
The plaintiff’s bill of particulars set forth an open account alleged to have' been due by the deceased, running from September, 1856, to February 17, 1872 ; to which was attached a certificate of prohate sworn to before the Register ot Wills on the 23d of March, 1871, and endorsed : “By the Orphans Court. Will pass when paid. Test: S. G. Cockey, Register.”
At the trial the plaintiff, to remove the bar of the Statute of Limitations, offered sundry items of evidence which were severally ruled out by the court below, and the question before the appellate court was whether these rulings were correct.
The specific items were as follows:
1st. He offered the second administration accountpassed by Charles S. Simmons one of the administrators, containing, among other allowances claimed by him, one to this effect: “No. 30. For this sum retained to pay George W. Pole, his account proved and passed, as per docket appears, 1165.77.”
2d. He proposed to prove by the Register of Wills that the account set forth in the bill of particulars' was proved and passed, according to the endorsement thereon in the handwriting of the witness.
3d. That the claim of the plaintiff against the estate of the deceased was entered upon the claims docket, one of the records of the Orphans’ Court.
4th. A conversation between the plaintiff and, the de *169 fendant Charles S., on the 17th of February, 1872, with reference to this claim.
5th. That the account sued on was the only claim of the plaintiff proved and passed by the Orphans’ Court; and that there was no order of that court directing or authorizing the defendants to retain any part of the estate of the deceased to meet the existing suit.
6th. He offered to read a letter to the plaintiff from Charles S., the defendant, dated March 6, 1872, commencing, “Enclosed find your account, and check for $163.15;” and concluding, “ Receipt the account and send it by mail as we must have it to file; ” and also a check of the same date for $163.15, payable to George W. Pole, or order, “in full of accounts and claims against the estate of R. E. Simmons.” Signed, “Jas. T. and C. T. Simmons, adm’rs of R. E. Simmons.” This check was drawn for about two dollars less than the amount claimed by the plaintiff in his account, and seems to have been refused for this reason.
7th. He also offered to prove a conversation between the defendant Charles S. and the judges of the Orphans’ Court, in which the judges informed him that he must pay the plaintiff’s claim before he could settle the second admininistration account with the Orphans’ Court; that this conversation took place while the witness was making up the second administration account, and that he preceeded to complete it immediatety afterwards; and that the second and third (being the final) accounts of the administrator were passed by the court; the second account which contained the item of $165.77 retained to pay plaintiff’s claim, was verified by the affidavit of Charles S., “ that the foregoing account is just and true, and that he has paid, or secured to be paid, the several sums for which he claims an allowance.”
The appellate court first considered the provisions of sec. 13, sub. ch. 9, of the Testamentary Act of 1798, ch. 101, which empowers an administrator “to reject and dispute any claim exhibited with the vouchers and proofs, in case he shall have reason to believe the deceased never owed or had dis *170 charged the debt or had a claim in bar; ” and adopted the case of Miller, Adm’r, vs. Dorsey, 9 Md., 317, as affording a correct construction of that section. There an administrator had paid a dividend to a creditor on his claim. Subsequently, and more than three years after this payment, an administrator d. b. who had received further assets, refused to recognize the residue of the claim, and interposed the plea of the Statute of Limitations when sued. Upon appeal it was held that if the administrator d. b. n. had no other rights than those belonging to the original administrator, “it did not preclude him from objecting to any claim which may be presented against the estate. The payment of a dividend by the original administrator did not preclude him, on the ascertainment of grounds of objection to claims once acknowledged by him, from urging that objection in a court of law. It cannot be pretended that if an administrator should, after acknowledging a claim against the estate of his intestate, discover that it had been paid, he would be debarred from setting up such fact to defeat the claim, and if this be so, why not the administrator d. b. n.? In either case the administrator is, in the first instance, the only judge whether the claim shall be paid or not. To his discretion and conscience alone is confided the propriety and justice of the plea of limitations; with this the Orphans’ Court has nothing to do.”
The appellate court then proceeded to comment upon sec. 10, suh. ch. 8, of the act of 1798, as follows: “ The provision of the testamentary law, authorizing the administrator to retain money to meet a claim known to him ‘ provided he can satisfy the court that such claim is just or may probably be recovered,’ is intended to promote dispatch in the settlement of decedent’s estates by setting apart a fund to meet outstanding claims, without delaying distributees or postponing the final account until all claims are paid. The entry of such a retainer does not imply an acknowledgment that anything is due, nor, as we have seen, deprive the administrator of the right to contest in courts of law, every such claim, by whatever legal defence he thinks proper to resort to.”
*171 “An administrator may undoubtedly, by his promise or acknowledgment, revive a debt due by his intestate (vide Forbes vs. Perrie’s Adm’r, 1 H. & J., 109; Chapman vs. Dixon’s Adm’r, 4 H. & J., 527; Quynn vs. Carroll’s Adm’r, 10 Md., 197); but the act of retainer, evinced by the record, legally imports neither promise, admission nor acknowledgment, express or implied.”
■ And the conclusion of the court upon the question of the admissibility and sufficiency of the evidence offered is that “these items of evidence, taken separately or collectively, were not sufficient, in oirr opinion, to remove the bar of limitations.”
It is apparent that the testimony offered in the case in 49th Maryland to remove the bar of the statute, was much stronger than that set forth in the statement now under examination ; and adopting the reasoning and conclusions of the Court of Appeals in that case, we consider it unnecessary to say anything further in support of the decision below; which is affirmed.