BROWNING vs. MAGILL.

Browning
vs
Magill

The purchasing a horse at a public market established by law for the sale of horses, &c. does not entitle the purchaser to hold the horse against the claim of the true owner.
There is no market overt in this state.

APPEAL from *Baltimore* county court. *Replevin* for a horse, brought by the appellee against the appellant. The defendant below pleaded property in himself, and issue was joined. It was agreed between the parties, that if the jury find the property of the horse, mentioned in the declaration, to have been in the plaintiff previous to the sale below stated, then the judgment shall be for the plaintiff, subject to the opinion of the court, upon the following case: A certain *Samuel Johnson* delivered the horse in question to *Richard Culverwell*, a person duly authorised by the corporation of *Baltimore* to sell horses at public sale. On Wednesday the 26th of March 1799, *Culverwell* sold the horse at the public market of the city of *Baltimore*, in the market-space established by law, to *Browning*, the defendant, between the hours of ten and eleven o'clock of the forenoon; Wednesday being the public market day of the said market-space. *Browning* paid *Culverwell* $28 for the horse, fairly and *bona fide*, and without any knowledge that the horse belonged to any other person than the person who had then sold him; and the regular market tolls, and other duties to be complied with agreeably to the regulations of the market in the said sale, were discharged. *Verdict* for the plaintiff; and the court gave judgment on the case stated and verdict, for the plaintiff. From that judgment the defendant appealed to this court.

The case was argued before TILGHMAN, BUCHANAN and GANTT, J.

*Martin*, for the Appellant. The question is how far property in the hands of a *bona fide* purchaser shall be protected? At common law it is clear, that a purchaser of property in public places, markets-overt, is protected. By the custom of *London* every day is a public day for the sale of goods, &c. and the purchaser is protected in his purchase. Every article sold during the hours for selling in shops in *London*, is legally sold, if it is an article usually sold in such shop. It is by the common law, that in every thing sold in market-overt, the purchaser is protected, and it is not confined solely to the city of *London* under the custom of that city. The statute of 21 *Henry* VIII, *ch.* 11, makes an alteration of the common law;

and if property is stolen, and the thief is prosecuted to conviction, then the party has a right to recover his property from a *bona fide* purchaser. But to recover, he must proceed to the conviction of the thief, and can only recover of him in whose possession the property is at the time of the conviction, even if the owner gave notice of his intention to prosecute the thief. *Horwood vs. Smith*, 2 *T. R.* 750. A purchase at a market-overt, is at such places as are authorised by law for the sale of property. All places where things are commonly sold are markets-overt. A market-overt means nothing more than the place where certain articles are usually sold. The purchaser of property in market-overt, is guilty of no impropriety or laches; but there is laches on the part of the owner of the property who does not keep his property safe and secure from being stolen. It is true, that the stealer of a horse may get him to market sooner than he could most other articles, so that he could not be pursued and taken so soon as he could if he had stolen any other article. Yet there is no distinction by the common law. In 2 *Blk. Com.* 449, the principles are fully laid down, where it is said that property may in some cases be transferred by sale, though the vendor *hath none at all* in the goods; for it is expedient that the buyer, by taking proper precautions, may at all events be secure of his purchase; otherwise all commerce between man and man must soon be at an end; and therefore the general rule of law is, that all sales and contracts of any thing vendible, in fairs or markets-*overt*, (that is open,) shall not only be good between the parties, but also be binding on all those that have any right or property therein, and for this purpose were tolls established in markets. Market-overt in the country, is only held on the special days provided for particular towns by charter or prescription; but in *London*, every day, except Sunday, is market day. The market place or spot of ground set apart by custom for the sale of particular goods, is also in the country the only market-overt. In *Baltimore* there is no market-overt, except such as is established by law. The same reason which makes every day a market day in *London*, applies to all large towns and cities. In *London*, every shop in which goods are exposed publicly to sale, is market-overt, for such things only as the owner professes to trade in. But if goods are stolen, and sold out of

1808.

Browning
vs
Magill

market-overt, the owner's property is not altered, and he may take them wherever he finds them, provided he uses due diligence in prosecuting the thief to conviction. So likewise, if the buyer knows the property not to be in the seller, or there be any other fraud in the transaction. If a man buys his own goods in a fair or market, the contract of sale shall not bind him, so that he shall render the price, unless the property had been previously altered by a former sale. But it is said that there is one species of personal chattels, in which the property is not easily altered by sale, without the express consent of the owner, and those are horses, unless bought in a fair or market-overt, according to the directions of the statutes 2 *P. & M. ch.* 7, and 31 *Eliz. ch.* 12. Nor shall such sale take away the property of the owner, if within a particular time after the horse is stolen he puts in his claim, and proves his property, and tenders to the purchaser such price as he *bona fide* paid for him in market-overt. That if any of the points stated in the above statutes be not observed, such sale is utterly void, and the owner shall not lose his property. These are the regulations now in use in *England;* but they do not operate here. In *Horwood vs. Smith,* 2 *T. R.* 750, it was held, that the owner of goods stolen, prosecuting the felon to conviction, cannot recover the value of them in *trover* from the person who *purchased them in market-overt,* and sold them again before conviction, notwithstanding the owner gave him notice of the robbery while they were in his possession. In 2 *Woodeson's Lectures,* 412, it is said, that by a sale the property is sometimes transferred.—For in a sale in open market it is good. The owner may get his property by prosecuting the thief to conviction. If goods stolen are gratuitously given away it is different. They must be sold. *Hardw. K. B.* 349. It is said in 2 *Azuni's Maritime Law,* 366, (note of the translator,) that the general rule in *England* has always been, that goods taken by pirates, as well as goods stolen on land, remained the property of the original owner, in whom they again vest on the conviction of the offender, unless they have been sold in *market-overt.* This exception of sales of stolen goods in *market-overt,* is peculiar to *England,* and was made for the convenience and security of public trade and commerce. Again, *(Ibid* 238,) that the laws of war give the victor the

full right of property in the goods taken from an enemy; and if he sells them, the former owner cannot reclaim them, though he finds them in a neutral country, or even in his own; but in a note by the translator, it is said, that the *English* courts consider a *sentence of condemnation* by a court, constituted according to the law of nations, as requisite to change the property so as to bar the claim of the original owner.

*Key* and *T. Buchanan* for the Appellee. A market-overt must be by charter or prescription, and without it there can be nothing like a market-overt. There can be none in *Baltimore* for the sale of live stock, horses, &c. Even if there is, it has never been considered in this state that a sale divested the property out of the true owner, except in a certain way. It cannot be considered that a newly created market is to be considered as a market-overt. By the declaration of rights the inhabitants of *Maryland* are entitled to the common law of *England*, and of such statutes as had been introduced and practised under as applicable to their local situation. If the law as stated by the appellant's counsel is admitted, then the statutes of 2 *P. & M. ch.* 7, and 31 *Eliz. ch.* 12, which passed before our colonization, restricting the sale of horses, should extend to this country. By these statutes, the common law was altered before the colonization of the country; and the common law, which we are entitled to, is that common law which was in existence at the time of colonization. These statutes clearly changed the common law, and if so, the sale of horses by those statutes was exempted, except in a certain way. The party claiming must make his claim good in pursuance of those statutes. If the common law was altered, then the sale in this case was not a valid one; and if the statutes of *P. & M.* and *Eliz.* are applicable to our situation, then the purchaser of the horse must show that he purchased in a particular manner, taking it for granted, (which is denied) that there was a market-overt in *Baltimore.* He who buys in market-overt must know that he does so agreeably to the rules of the market-overt. There is no authority in the charter of the city of *Baltimore,* granted by the act of 1796, *ch.* 68, to pass any ordinance to affect persons, not citizens of *Baltimore.* Nor does the charter

1808

Browning
v.
Magill

1808.

Browning
vs.
Magill

give any authority to establish a market for the sale of horses; but admitting such authority is given, yet being a special authority, it was not competent for the corporation, by any ordinance, to affect any person not a citizen of that city. Having a limited jurisdiction, there was no authority delegated to establish a market-overt, so as to affect persons not within their jurisdiction. The creation of a market-overt does not of course give a right to sell horses—It may give permission to sell provisions. The market space in *Baltimore*, means a portion of ground just by the market established for the sale of live stock, &c. A market-overt never attached to the erection of a new market, but only to an old established market, where the powers are given to hold a market-overt. It is not to be supposed that every market, established in the different counties for the sale of provisions, does imply that horses may be sold there. It appears that in *London* there cannot be sold, in a jeweller's shop, any thing not usually sold there. So in the market in *Baltimore* for the sale of provisions, it is not contemplated, nor is it to be inferred, that horses can be sold there. Upon the same principles, the sale of slaves might be made at such a market. It must be a market established for the sale of the particular species of property. The only act of assembly then is the act of 1793, *ch.* 59, for the sale of stock, horses, &c. at a different place from that at which the horse in question was made. This act was only in existence for seven years, and would not have been so long continued, if it had been believed that stolen horses might be sold, and the right passed by such sale. It may be conceded, that by the civil law the holder of property may sell, but it is denied that this is the law either in *Great Britain* or in this state. It would be holding out inducements to persons to steal property, and carry it to *Baltimore* for sale. Our laws contain a better policy, they protect the citizens against rogues. It has been decided in *Wheelwright vs. Depeyster*, 1 *Johns Rep.* 471, that the *English* law, in regard to sales in *market-overt*, is not applicable in the state of *New York*, where no such institution exists. Nor is it applicable in this state; and if it is, the sale in this case would not be legal.

1808.

Browning
vs
Magill

*Martin,* in reply. The opinion delivered by *Kent,* Ch. J. in *Wheelwright vs. Depeyster,* was *extra judicial;* for the judge acknowledged that the effect of a purchase in market-overt was not strictly before the court. The question before this court is, what is the common law of *England* as to markets-overt; and if there be any common law on the subject, has it been adopted in this state? *Caveat Emptor* is not the rule as to the personal property, but it is as to real property. Possession of personal property is *prima facie* evidence of right. This is essentially necessary for the benefit of commerce. Every market is a market-overt, and means an *open market,* in which every thing usually sold is a good sale. A sale openly made in market, is made in market overt. It is of no consequence how the market is established; if it is an established market, that is sufficient for the sale of an article usually sold in such market. In shops it is not usual to sell horses, but in other markets they may be sold. In country markets any thing may be sold to supply the wants of the people. Several acts of assembly passed establishing markets in the city of *Baltimore.* Sales were not confined in those markets to provisions, but every kind of provisions, live stock, goods, and every description of thing was permitted to be there sold. The act of 1796, *ch.* 59, established a market for the sale of live stock, &c. and it pointed out a different place where the market should be, because inconveniencies arose from the sale of live stock, &c. in the other markets, where they had been sold before. This act, not answering the purposes for which it was intended, was permitted to expire, and the sale of live stock, &c. left as it was before that act. It is right and proper that a fair purchaser, who *bona fide* pays his money, should be protected in his purchase. The original owner is sufficiently protected if he prosecutes and convicts the thief. The statutes of *P.* and *M.* and *Eliz.* protect as to horses; but the price *bona fide* paid, must be repaid to the purchaser.

JUDGMENT AFFIRMED.