ROGERS, Surviving Executor of YELLOTT, *vs.* WATERS.
*December*, 1829.

A promissory note given by a member of the vestry of a church, for a debt due, not by him in his individual character, but by the vestry, a corporate body, of which he was a member, without any consideration moving to himself, is a promise to pay the debt of another, without consideration, and void.

The fact, that a note was payable at a future day, where it appeared that it was made for the purpose of closing an account, for which the maker was not responsible independent of the note, does not furnish the slightest presumption that forbearance was purchased by it; for nothing is more common than the closing of accounts by passing notes payable at future days, without the consideration of forbearance being thought of.

The acknowledgment of a defendant, that the promissory note upon which he was sued as maker, was originally given to close an account, which the payee and plaintiff had against the vestry of a church, of which he, the defendant, was a member; and that the money arising from the pew rents was to have been applied to the payment of the same, but that it never had been paid, is not sufficient to take‏ the case‏out of the Statute of Limitations. It shews that there never was an existing debt due from

the defendant ; and that when the note was given, it was not to be paid by him, but out of the money arising from the pew rents, which exempts him from any moral obligation to pay.

Where a plaintiff gives in evidence a letter from the defendant, to avoid the Statute of Limitations, he must take the letter as it is.

APPEAL from *Baltimore* County Court.

This was an action of *Assumpsit,* by the appellant, *Philip Rogers,* as surviving executor of *Jeremiah Yellott,* against the appellee, *Hezekiah Waters,* docketted by consent on the 12th of May, 1823.

The declaration contained a count on a promissory note for $211 62, dated December 17th, 1804, of which the appellee was the maker, and payable six months after date, to the plaintiff's testator. There were also counts for money had and received, paid, laid out, and expended; and a count on a promise by the defendant, to the plaintiff as executor, in consideration of the said sums of money, due as aforesaid, to the plaintiff's testator.

The defendant pleaded,

1st. *Non assumpsit.* 2nd. *Non assumpsit infra tres annos.* 3d. *Actio non accrevit infra tres annos.* Issue to the first plea; and general replications to the 2nd and 3d pleas, and issues joined.

At the trial, the plaintiff gave in evidence, that the defendant signed and delivered to the plaintiff's testator the following promissory note: " $211 62 ; *Baltimore,* 17th December, 1804—Six months after date, I promise to pay to *Jeremiah Yellott,* or order, two hundred and eleven dollars, and sixty-two cents, for value received. *Hezekiah Waters.*" And also gave in evidence that letters testamentary were, in due form of law, granted to the plaintiff and one *Samuel Owings,* now deceased, and whom the plaintiff hath survived, as executor of said testator ; he also offered in evidence the following letter, which was written by the defendant, and delivered to the plaintiff: "*Baltimore,* October 22d, 1822. Mr. *Philip Rogers,* Sir : The note in your possession, with my signature, originated in the

following manner, viz : On settlement of an account with
*Capt. Yellott,* some time in the month of February, 1804,
there appeared a balance due him of about $211, being
money disbursed and laid out by him in the completion of
*St. Peter's Church,* to close which, it was agreed by the
vestry and *Capt. Yellott,* that some one of the vestry should
sign a note for the balance, payable six months after date,
and it was finally concluded, that myself, as one of the
vestry, should sign that note, and that money arising from
the pew rents, should be applied to the payment of the
same. *Capt. Yellott* held this note for more than six months
after the time limited for payment, and till the time of his
decease, without ever demanding payment, or mentioning
any thing on the subject, which induced a hope that he
intended to make it a present to the church, he being a
vestryman during all this time, if I mistake not. Several
years after the decease of *Capt. Yellott,* Mr. *Samuel*
*Owings,* one of his executors, mentioned to me that he had
this same note in his possession. I informed *Mr. Owings*
in what manner it originated, and at the same time told him,
that I would press the vestry to raise the money, and to
have it taken up. I accordingly several times mentioned
the subject to the vestry without effect, there never being
money in the treasurer's hands to meet the current expenses
of the church, which several gentlemen in the present
vestry must well recollect, as they were members of the
former vestries for many years, and till the unpleasant revo-
lution which took place in 1815–1816, since which time
I have had very little communication with them. I am
under the impression that *Mr. Wm. Jessop, Mr. Wm.*
*Krebs,* and *Mr. Francis Hollingsworth* were all present
at the time of the statement of the account alluded to above,
and that *Mr. Hollingsworth* acted as secretary at the time,
and could the book in which *Capt. Yellot* kept the church
account be produced, the record made at that time would
explain the whole transaction. The aforegoing is a just and
true statement of this unpleasant business, therefore cannot

suppose that the administrators of the church property would wish to involve me in trouble, as it is most evident that this money was expended on the church, and has never yet been paid. Would you be pleased to see *Mr. F. Hollingsworth* on the subject; I am confident he must recollect the transaction, and if I am not mistaken, the note in question is in his hand-writing. *Hez. Waters.*" And that the said testator died in the month of February, in the year 1805, and that letters testamentary were granted the said *Samuel* and *Philip*, on the first of March of the same year. Whereupon, the defendant moved the Court to instruct the jury, that if they shall believe the evidence so given as aforesaid, that then the said note was given without a sufficient consideration therefor, moving from the said *Yellott* to the defendant, and therefore does not create a debt or obligation in law upon the defendant, to pay the money in said note mentioned; and also that the said matters so offered do not afford sufficient evidence of his admission or acknowledgment of being indebted, or of his promise to pay any existing debt, and therefore is not sufficient to take this demand out of the operation of the Statute of Limitations, pleaded in this cause; of which opinion on the Statute of Limitations the court *(Hanson, A. J.)* was, and so directed the jury. The plaintiff excepted; and the verdict and judgment being against him, he appealed to this court.

The cause was argued before BUCHANAN, Ch. J., and EARLE, MARTIN, STEPHEN, ARCHER, and DORSEY, J.

*H. W. Rogers*, for the appellant, contended,

1st. That the appellee had admitted the actual existence of the debt at the date of his letter of acknowledgment, on the 22d of October, 1822; and,

2d. That the acknowledgment is accompanied by no circumstances intended by the defendant as a defence against the payment; and that if intended as a defence, they are not

such, as *ex æquo et bono* ought to release him from the payment of the original debt.    *Oliver vs. Gray,* 1 *Harr. and Gill,* 216.

*S. I. Donaldson* for the appellee.   The letter of defendant shews there was *no consideration for the note,* moving from plaintiff to him.   No moral obligation on his part, *at any time,* to pay it.   If so, how can acknowledgment that it had not been paid, after a lapse of nearly eighteen years, *create* a liability?

Examine the phraseology of the letter; settlement with *Capt. Yellott* of balance due him for money "laid out by him in the completion of St. Peter's Church."   Was defendant bound to pay this money?   *Yellott* was a vestryman as well as defendant.   No more responsibility resting on one, than the other, and no personal liability in either. The note was agreed by the vestry and *Capt. Yellott* to be signed by one of the vestry, and "it was finally concluded that" defendant, "*as one of the vestry,* should sign the note, and that money arising from pew rents, should be applied to the payment of the same."   It was the mere evidence of debt from vestry to *Capt. Yellott, to be paid by funds of vestry.*   Was the money advanced on credit of defendants?   This is not pretended.   If considered then as an engagement to pay the debt of another, void for want of consideration in hands of payee of note, a consideration is necessary to its validity.   *Wyman vs. Gray,* 7 *Harris and Johnson,* 409, *and Elliot vs. Giese, Ib.* 457.

What was the inference of defendant, from *Capt. Yellott's* not demanding payment of note when due, and not demanding it as long as he lived?   Not that he, the defendant, was to derive any benefit, but that *Yellott* intended to make it *a present to the church,* clearly shewing that defendant never regarded it as a debt which he was bound to pay: *Yellott* never intended it so, and his acts show it.   The conversation between defendant and *Samuel Owings,* one

of the executors, confirms it, as no attempt was then made to recover it from defendant, nor during *Mr. Owing's* life, and the embarrassed state of the pecuniary concerns of the church, shew the reason of the non payment of the debt due from the vestry. If defendant's declarations are relied on by plaintiff, to take a case out of the Act of Limitations, he must take them altogether, and cannot disprove them by other evidence. *Oliver vs. Gray*, 1 *Harr. and Gill*, 204.

An acknowledgment of a debt, which will take a case out of the statute, must be unqualified and unconditional. *Wetzell vs. Busserd*, 11 *Wheat.* 309. *Clementson vs. Williams*, 8 *Cranch*, 72, and *unaccompanied* with a protestation against the payment of it. *Johnson vs. Burdslee*, 15 *Johns. Rep.* 3, and no promise to be inferred from declaration of defendant, that he was not holden to pay. *Lawrence vs. Hopkins*, 13 *Johns. Rep.* 288. Acknowledgments must be of a present subsisting debt, unaccompanied by any qualification or declaration, which, if true, would exempt defendant from moral obligation to pay. *Oliver vs. Gray*, 1 *Harr. and Gill*, 204. *Bell vs. Morrison*, 1 *Pet. Sup. Ct. Rep.* 360, 362, 364, 365, 366. In this case defendant's letter does shew that he never was liable to the payment of this debt, that he was exempt from moral obligation to pay; the debt was due by the vestry of St. Peter's, not by defendant. There must be more than an admission that the debt is unpaid. There must be admission, or proof, that debt ever existed. *Leeper vs. Tatton*, 16 *East.* 421. *Lord Ellenborough's Opinion on Trial at Nisi Prius.* Here the evidence shews that debt *never existed.* There can be no ground for reversing the judgment. If viewed as an engagement to pay the debt of another, it is within the principle laid down in *Wain vs. Warllers*, 5 *East.* 10; *no consideration appearing on the instrument itself.* This principle was adopted by Court of Appeals, in *Wyman vs. Gray*, 7 *Harris and Johnson*, 409. In latter case, it was a promissory note,

as in this.   Yet it being for a debt due by the *Patapsco Manufacturing Company*, with a right to examine into original consideration, party was held not liable, though maker of note.

BUCHANAN, Ch. J. delivered the opinion of the Court.

This case appears, under former decisions of this Court, to be clear of difficulty.

It is an action of *Assumpsit*, brought upon a promissory note given by the defendant to *Jeremiah Yellott*, the appellant's testator, on the 17th of December, 1804, and payable six months after date, more than twenty years before the bringing of the suit.   The issues are upon the pleas of *non assumpsit, non assumpsit infra tres annos*, and *actio non accrevit infra tres annos*.

To support the issues on his part, and to take the case out of the operation of the Act of Limitations, the appellant produced and read to the jury, a letter addressed to him on the 22d of October, 1822, by the defendant, in which he admits that the money for which the note was passed has not been paid, but alleges, that under an arrangement between *Jeremiah Yellott*, and the *Vestry of St. Peter's Church*, to which body both he and *Yellott* belonged, it was given in order to close the account for a balance due to *Yellott*, on account of money laid out by him in the completion of the church, to be discharged by the application to that purpose, of money arising from the pew rents.

In the case of *Wyman vs. Gray*, 7 *Harr. and Johnson*, 409, decided by this Court, it was determined, that a note given by an individual corporator, for a debt due by the corporation, and not by him in his individual capacity, and without any new or superadded consideration moving to himself, was a promise to pay the debt of another, and void, there being no sufficient consideration to support it.

Here the letter of the defendant is the evidence produced and relied on, by the appellant himself, and that letter

proves, that the note, which is the subject of the suit, was given for a debt due, not by him in his individual character, but by the *Vestry of St. Peter's Church*, a corporate body, of which he was a member, but without any consideration moving to himself. It is therefore a promise to pay the debt of another, without consideration, and *nudum pactum* and void. And the question presented by the bill of exception, is, whether the letter of the defendant had the effect to take the case out of the operation of the Act of Limitations?

In *Oliver vs. Gray*, decided by this Court at the June Term, 1827, it was held, that an acknowledgment to take a case out of the Act of Limitations, must be of a present subsisting debt, unaccompanied by any qualification or declarations, *which, if true*, would exempt a defendant from a moral obligation to pay; and that an admission, that the sum claimed has not been paid, is not sufficient without some further admission, or other proof, that the debt once existed. In this case, the defendant does, in his letter, acknowledge that the sum claimed has not been paid, but at the same time he insists, that the note was not given for a debt due by himself, but by the *Vestry of St. Peter's Church*, under an agreement between the vestry and *Yellott*, that it should be signed by *him* to close the account, but to be paid out of money arising from the pew rents. There was no consideration moving to the defendant, nor any antecedent debt due by him individually; no consideration of forbearance expressed in the note, as the consideration upon which it was given, as has been supposed. Nor is there any evidence of such a consideration, *de hors* the note. It is, to be sure, made payable six months after date, but it was given (according to the appellant's own proof, as contained in the defendant's letter, which, as he has introduced it, he must take it as it is) for the purpose of closing account, on the settlement of which that amount was found to be due to him from the vestry of *St. Peter's Church*, which by no means proves, or furnishes the slightest pre-

sumption, that the forbearance of *Yellott* to sue the vestry, was purchased by the giving of that note; on the contrary, if we were to deal in conjecture, it would rather seem, that the favor, if any, was a favor to him, in thus closing an account open upon the books.   And perhaps nothing is more common than the closing accounts by passing notes, payable at future days, without the consideration or forbearance being thought of.   To suppose that it was given for the consideration of forbearance, looking to the note itself, would be to give to it a construction unauthorised by any thing appearing upon the face of it, and to offer violence to the evidence, which asserts that it was given for the purpose only of closing an open account, and being the acknowledgment of the party offered by the appellant to take the case out of the Act of Limitations, and the only evidence in the cause, except the note itself, he must be content to take it altogether, as it stands, and cannot garble it, and select such parts as will suit his purposes, and reject the residue; otherwise it would be to take the case out of the Act of Limitations by other proof than the acknowledgment of the defendant, and that cannot be: which would be the effect of the remote inference, that the note was given for the consideration of forbearance, drawn from the mere circumstance that it is made payable at a future day, in opposition to the allegation that the object of it was to close the account between *Yellott* and the vestry, and that it was to be paid out of money arising from the pew rents; which shows that the payment of it by him individually, was not contemplated by any of the parties.

That part of the letter relied upon, is in these words: "On settlement of an account with *Capt. Yellott*, some time in the month of February, 1804, there appeared a balance due him of about $211, being money disbursed and laid out by him in the completion of *St. Peter's Church*, *to close which*, it was agreed by the vestry and *Capt. Yellott*, that some one of the vestry should sign a note for the balance, payable six months after date; and it was finally

concluded, that myself, as one of the vestry, should sign that note, and that money arising from the pew rents, should be applied to the payment of the same."

The note then, being a promise, or agreement to pay the debt of another, and void for want of a sufficient consideration moving to the defendant, there never was an existing debt due by him; and his acknowledgment that the sum claimed has not been paid, is not an admission of any present subsisting debt. And the understanding at the time the note was given, that it was not to be paid by him, but out of money arising from the pew rents, exempts him from any *moral* obligation to pay it. I think, therefore, that the acknowledgment of the defendant, was not sufficient to take the case out of the Act of Limitations, and that the direction given to the jury was right.

JUDGMENT AFFIRMED.