## LOUIS F. BEELER *vs.* PATRICK CLARKE.

*Limitations—Acknowledgment of Debt and Promise to Pay—Removing Bar of Statute.*

A promissory note barred by limitations was presented to the maker with a demand for payment.  The maker said : "I cannot do that now as I have two members of my family now to support."  *Held*, that this language amounts to an admission of a present subsisting debt, from which a promise to pay is implied, and removes the bar of the statute.

Appeal from the Superior Court of Baltimore City (DENNIS, J.), where the cause was tried before the Court without a jury.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE and SCHMUCKER, JJ.

*W. Irvine Cross*, for the appellant.

Appellee's contention is that if a man is asked to pay a note, and has more than one reason for not doing so, he must give each and every such reason, and will be presumed to deny everyone that he does not give. Appellant contends that the ordinary laws of thought govern; that stating one reason will not negative another unless they be in their nature contradictory and inconsistent. The answer of Beeler is given in two forms: " I could not pay it now," and " I cannot do that now." They may be treated as identical. Now this statement could be completed in any of the following ways: (1.) "I could not pay it now; I would if I could, for I owe it." (2.) " I could not pay it now; I would not if I could, for I do not owe it." (3.) " I could not pay it now; I do not know whether I owe it or not, but I will look back and see."

Any one of these might well be given as to a claim over eighteen years old. We will suppose that a man thus approached recognizes clearly that a fraudulent claim is being made. He is, however, so impecunious that it is needless to go into that question, and he simply avoids controversy by stating his inability to pay. Appellee holds that he must open up what may be simply a moot controversy, deny the debt and perhaps have an angry discussion that will never have any practical result.

Suppose, on the other hand, the man has no recollection of the debt (note) and is entirely impecunious. It is a stale claim, and somewhat suspicious. He does not care to go into the question of the legality or justice of the debt. There is nothing unnatural, nothing wrong and nothing surprising in his simply taking up the question of his ability *vel non* to pay at that time, leaving the other question for future examination. Where the most practical of all reasons for not doing a thing—inability—is given, certainly no in-

ference is to be drawn from a failure to give other legal or ethical reasons. How would such reasoning be considered if applied to other subjects? A man is asked to play poker. He replies: " I have no money just now." Appellee would contend that by this reply he proclaimed himself a gambler—wicked enough to play if he only had the funds. Not so. He simply gives the most satisfactory, practical reason for not playing then, and avoids all discussion of the moral question. We think that the principle here contended for is sustained by all the authorities. In *Thompson* v. *Peter*, 12 Wheaton, 566–7, Chief Justice Marshall seems to have gone out of his way to declare it. A statement of inability to pay a claim is not and cannot be an admission of that claim. It is impossible to go through the mass of decisions as to what will and what will not constitute a new promise. They for the most part turn on the special facts of those cases and do not touch upon the principle involved in this. We can only call to the Court's attention the fact that no decision in this State has allowed an acknowledgment of a debt to be inferred from a statement of present inability to pay it, nor do the general rules laid down by our Courts lend any sanction to such a notion.

In *Buswell on Limitations*, section 42, we are told: " An implied promise is created only by a *clear and unqualified* acknowledgment, *equivalent to a new promise*. It must be absolute, unconditional and not controlled by other language." In the case of *Sprogle* v. *Allen*, 38 Md. 336, this Court held that there must be " a distinct acknowledgment of a present subsisting debt." In the case of *Wells* v. *Hargrove*, 117 Mo. 566, 569, the answer to a claim was : " My intentions are true and faithful, but my abilities are rather cramped now until I can sell or make some money otherwise." The Court held this not a new promise. See also—*Douglas* v. *Elkins*, 28 N. H. 26 ; *Wood on Limitations*, (2nd ed.) 221 ; *Bell* v. *Morrison*, 1 Peters, 360 ; *Clementson* v. *Williams*, 8 Cranch, 74 ; *Keplinger* v. *Griffith*, ·2 G. & J. 296.

*Joseph C. Mullin* (with whom was *Michael A. Mullin* on the brief), for the appellee.

In applying the rule laid down in *Oliver* v. *Gray*, 1 H. & G. 204, and *Keplinger* v. *Griffith*, 2 G. & J. 296, to cases of this kind, the only essential elements to be discovered in the new promise are, first, a " refusal ;" and second, an accompanying excuse, " which in itself implies an admission that the debt remains due, and furnishes no real objection to the payment of it." Analyzing the new promise both in *Keplinger* v. *Griffith*, and in the case at bar, and applying to each the two requirements of the rule, the analogy of the cases is apparent, for in both cases the *refusal* is almost identical ; in the one " he could not pay the said note," and in the other, " I cannot do that now." The *excuse* that in each case accompanies the refusal clearly satisfies the rule by implying an admission of the debt without offering a valid excuse for non-payment ; the case at bar, we submit, offering even in a less degree " a real objection to the payment," because there is here no effort made to discredit the original transaction and no defense extending to the merits of the claim, which in the *Keplinger case* was evidently attempted.

In the case of *DeForrest* v. *Hunt*, 8 Conn. 179, the new promise was a letter : " Yours of the 12th inst. came to hand this day, requesting to know what prospect I have of paying the demands against me. I am extremely sorry to say to you that the prospect at present is not very flattering, as it is utterly out of my power to pay anything." The refusal here " that the prospect at present is not very flattering," is similar to that in the case at bar—" I cannot do that now." It was held to be clear that the new promise removed the bar of the statute.

For Maryland cases wherein the new promise was held sufficient, *vide : Brookes* v. *Chesley*, 4 Gill, 205 ; *Carter* v. *Cross*, 7 Gill, 43 ; *Mitchell* v. *Sellman*, 5 Md. 376 ; *Carroll* v. *Ridgaway*, 8 Md. 328 ; *Shipley* v. *Shilling*, 66 Md. 562 ; *Buffington* v. *Davis*, 33 Md. 510.

For other illustrations of revival of the remedy by a new

promise, *vide : Wright* v. *Parmentor*, 52 N. Y. Supp. 99 ;
*Walsh* v. *Mayer*, 111 U. S. 31 ; *Edmonds* v. *Goater*, 15
Beav. 415 ; *Frost* v. *Bengough*, 1 Bing. 266 ; *Leaper* v. *Tat-
ton*, 16 East. 420 ; *Foster* v. *Smith*, 52 Conn. 449.

PEARCE, J., delivered the opinion of the Court.

The cause of action in this case is a promissory note for
$300, made by the appellant to the appellee April 26th,
1877, and payable 60 days after date, suit having been in-
stituted Sept. 3rd, 1898.    The pleas were the general issue
and the statute of limitations.    The case was tried before
the Court without the intervention of a jury, and judgment
was rendered for plaintiff for the amount of the note with
interest.    At the trial the appellee offered the note in evi-
dence, which he testified was in the handwriting of the ap-
pellant, and was given to secure a loan of $300, then made,
no part of which had ever been paid, though he had de-
manded payment on three different occasions at times and
places which he named, the last time being the day before
the presidential election in 1896, on Pier 9 of the B. & O.
R. Co., in Baltimore ; that on the first two occasions the
appellant simply said he was not able to pay it ; that on the
last occasion the appellee drew out the note—showed it to
the appellant, and told him he wanted him to pay the face
value of the note, and that appellant replied " I cannot do
that now, as I have two members of my family now to sup-
port."    Daniel Meyler testified that he was present on the
last occasion mentioned ; that he had seen that note before
in appellee's possession ; that he saw it presented at that
occasion ; heard appellee ask appellant to pay him the
money he owed him, and that he replied he was not in a
position to pay him then.    The appellant testified that he
had no recollection of giving the note, but that both the
body and signature appeared to be in his handwriting ; that
to the best of his knowledge he never borrowed any money
from the appellee, and never owed him any, and that he had
never seen the note until it was presented to him by Mullin,

as attorney for the appellee, and that the appellee never made any demand upon him for money due; but on two occasions, about four and two years before that time, had asked him for a loan of $500, which he did not make. He was not asked whether he said he could not pay the note then because he had two members of his family to support, and his testimony embraced no denial of the use of that language. The appellee denied that he ever asked appellant for a loan, and Meyler testified that no loan was asked for on the occasion when he was present.

Upon this testimony the appellee offered the following prayer : " If from the evidence in the cause the Court finds that the defendant for valuable consideration executed and passed to the plaintiff the promissory note sued on in this cause, and has not paid the same, and although from the evidence the Court should find that said cause of action accrued more than three years before the bringing of this suit, yet if from the evidence the Court further find that within three years before the suit, the plaintiff demanded of the defendant payment of the promissory note sued on, and exhibited at the same time to the defendant the said promissory note, and the defendant, without denying or disputing the authenticity of said note, or his legal obligation to pay the same, said only " I cannot do it now, I have two members of my family to support," then there is sufficient evidence in the cause to relieve the said cause of action from the bar of the statute of limitation pleaded by the defendant."

And the appellant offered two prayers, the substance of the first being that there was no evidence legally sufficient to show an acknowledgment within three years before the suit, either of the note sued on or of any existing indebtedness whatever at the time of the acknowledgment claimed ; and the second, that there was no evidence legally sufficient to remove the bar of the statute of limitations. The Court granted the plaintiff's prayer, and refused the two prayers of the defendant—to which ruling the defendant excepted, and has brought this appeal.

Appellant's counsel has addressed to the Court a most ingenious and interesting argument, one which might have
much weight, if we had to determine here for the first time,
what is a sufficient acknowledgment to take a case out of
the Act of limitations, but as was said by CHIEF JUSTICE
LEGRAND, in *Quynn* v. *Carroll*, 10 Md. 208 : " The statute
of limitations has ever been a fruitful source of doubt and
discussion, and the decisions in regard to it, both in this
country and in England, various and contradictory.    This
being so, whenever it is found that the question presented in
the particular case, for the time under consideration, has been
settled by the adjudications of the appellate Court of this
State, such adjudications ought to be followed, whatever
may have been the decisions elsewhere : "    And looking to
the decisions in this State, we cannot doubt that the ruling
of the learned judge of the Superior Court in this case was
entirely correct.   It may perhaps be conceded that the principles announced in the leading case of *Oliver* v. *Gray*, 1 H.
& G. 204, are more liberal to indulgent creditors than might
be deemed wise at this day when parties in interest are permitted to testify, and those principles are so often made
available to defeat the salutary policy of the statute as a
statute of repose ; but that decision has been too frequently
and too emphatically affirmed by our predecessors, and by
ourselves to permit us now to depart from it, as we must
do, if we should reverse this decision. In *Shipley & Wampler* v. *Shilling*, 66 Md. 563, it is said : " The principle is now
well settled, in this State at least, that where a debt is admitted to be due, the law raises by implication, a promise
to pay it ; and it is, therefore, immaterial whether the
promise be made in express terms, or be deduced from an
acknowledgment as a legal implication ; as in either case,
the effect is the removal of the bar of the statute, and the
restoration of the remedy on the original demand." In
*Keplinger* v. *Griffith*, 2 G. & J. 301, it was held that the
language used by the defendant " was a clearly implied admission that the debt remained due and unpaid, and the ex-

cuse alleged for not paying it, furnished no real objection to the payment of it, if true." It is, therefore, clear in this State, that not only the promise to pay, but the acknowledgement of a present subsisting debt, may be implied from the language used. Here the appellant is confronted with an obli gation which he admits not only to have been signed but to have been written by himself, and when the obligation is presented, accompanied by demand for payment, he says " I cannot pay it *now*, as I have two members of my family *now* to support." Upon the authority of *Keplinger's case* (*supra*), this constitutes an implied admission of a present subsisting debt, and being unaccompanied by any qualification which, if true, would exempt him from any moral obligation to pay, it raises an implied promise to pay, and removes the bar of the statute. This case, however, is stronger than *Keplinger's case*, because the use of the word *now* twice occurring suggests the purpose of future payment when the disabilities now existing may be removed. At the last term of this Court in the case of *Babylon* v. *Duttera*, 89 Md. 444, we applied this rule without relaxation, holding that a declaration of a defendant that if he had known certain notes would have been assigned he would have paid them off was sufficient to remove the bar of the statute.

*Judgment affirmed with costs above and below.*

(Decided December 6th, 1899).