## PAUL A. KNIGHT *v.* MAMIE KNIGHT,

### ADMINISTRATRIX.

[No. 62, January Term, 1928.]

*Decided April 19th, 1928.*

The cause was submitted on briefs to BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*James J. Lindsay* and *L. Wethered Barroll,* for the appellant.

*B. Harris Henderson* and *Randolph Barton, Jr.,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

This is an appeal from a judgment for costs entered in favor of Mamie Knight, administratrix of Maurice L. Knight, in a suit brought by Paul A. Knight, the appellant, upon the common counts, to which was attached the following statement:

"To money due for services rendered, for work and labor done in the stone cutting business as per agreement between Morris L. Knight and Paul A. Knight, whereby as a contribution to the joint business undertaking of Morris L. Knight, and Paul A. Knight, said Paul A. Knight, agreed to accept for his services during this period the sum of thirty dollars ($30.00) per week, but to only draw fifteen dollars ($15.00) a week of such salary and to allow the balance of his total wages of thirty dollars, or fifteen dollars to remain in the business, which additional amount with interest due said Paul A. Knight was not and has never been paid him for his services in said business in the capacities in which he rendered services in said stone cutting business."

Then follows in the statement a charge of fifteen dollars per week for each of the years the plaintiff worked for Maurice L. Knight, commencing with March 7th, 1907, and ending on the 30th day of May, 1916, with interest upon the amount charged for each of said years. The whole amount,

principal and interest, being $13,596.00. This amount is then credited with eleven payments, amounting in all to $100. There was attached to the statement the affidavit of the appellant, and accompanying the declaration was an election for a jury trial.

In addition to the pleas of never indebted, and never promised as alleged, the defendant filed the plea of limitations. On the first and second of these pleas, the plaintiff joined issue, and traversed the third, on which the defendant joined issue.

The case was tried by a jury and, in the progress of the trial, seven exceptions were taken to the rulings of the court. Six of these related to evidence, and one to the granting of defendant's prayer at the conclusion of the plaintiff's case, withdrawing the case from the jury.

The chief question in this case is presented by the ruling of the court in granting defendant's prayer withdrawing the case from the jury, by which ruling the court held that the evidence offered was insufficient to remove the bar of the statute of limitations.

Charles O. Knight, a brother of both Maurice L. and Paul A. Knight, when produced as a witness by the plaintiff, testified that Paul, the youngest brother, worked for Maurice, his oldest brother, for ten or twelve years in the business of stone cutting. He first worked as an apprentice boy and thereafter, from 1907 to 1916, as a mechanic, and he was, during this time, a skilled and accomplished workman. The witness also testified that he, for the greater part of the year 1904, worked for Maurice. Thereafter he was frequently at Maurice's place of business, and at times between 1907 and 1916 helped Maurice to pay his workmen, Maurice saying that he did not have money to meet the pay roll and to pay Paul what was owing to him, and that Maurice, within the period mentioned, paid to others working for him so much as thirty to sixty dollars per week.

One William H. Long testified that he had known Paul A. Knight intimately from boyhood; that they were much together. He also knew Maurice, but not so well as Paul.

246

That about the middle of July, 1926, the month in which Maurice died, he heard a conversation in Union Square between Maurice and Paul. He and Paul had gone to the Square together and while there Maurice came to the Square. When they met, the brothers spoke to each other and Paul, it seems, expressed a wish to talk to Maurice, who at the time was about to enter the comfort station, and he said to Paul, "Wait a minute, I will talk with you." When Maurice returned to them, Paul said to him: "You withheld fifteen dollars every week of my money, my salary, for over ten years, not even paid me the interest on the money." Maurice in reply thereto said: "I have been an awful sick man for over two years, and my health won't permit me to continue the business and I have several offers from different stonemen to purchase the entire stone business; as soon as I sell the business I intend to pay you every cent I owe you." At that time he reaches in his pocket and takes out some money and hands the money to Paul Knight and says, "All I have that I can pay, the best I can pay today, is twenty-five dollars on account." Paul Knight takes a piece of paper out, walks over to the comfort station and writes on the piece of paper * * * and hands it to Mr. Maurice Knight. He puts it in his pocket and Mr. Maurice Knight says, "Well, I will settle with you as soon as I sell the business." That was the last of the transaction.

The last charge, in the above mentioned statement made against Maurice L. Knight by Paul A. Knight, was for services rendered by the latter to the former, ending on the 30th day of May, 1916, more than ten years before the institution of this suit, and unless there can be found in the above stated conversation an express promise to pay to Paul the debt sued for, or an acknowledgment of its existence at such time, amounting to an implied promise by the deceased to pay the same,.the claim sued for was barred by the act of limitations.

"It has been often ruled in this court, that the acknowledgment to take a case without the statute must be of a subsisting debt, and equivalent to an implied promise to

pay; and it must not be accompanied by any qualifications or declarations which, if true, would exempt the party from a moral obligation to discharge it." *Oliver v. Gray*, 1 H. & G. 204; *Rogers v. Waters*, 2 G. & J. 71; *Frey v. Kirk*, 4 G. & J. 509; *Brookes v. Chesley*, 4 Gill, 205; *Duvall v. Peach*, 1 Gill, 172; *Beltzhoover v. Yewell*, 11 G. & J. 216; *Ellicott v. Nichols*, 7 Gill, 85; *Mitchell v. Sellman*, 5 Md. 377; *Stockett v. Sasscer*, 8 Md. 374; *Higdon v. Stewart*, 17 Md. 111; *Felty v. Young*, 18 Md. 167; *Shipley v. Shilling*, 66 Md. 558; *Babylon v. Duttera*, 89 Md. 444; *Beeler v. Clark*, 90 Md. 221; *Gill v. Donovan*, 96 Md. 523.

In *Shipley v. Shilling, supra*, this court said: "Where a debt is admitted to be due, the law raises by implication a promise to pay it; and it is, therefore, immaterial whether the promise be made in express terms, or be deduced from an acknowledgment as a legal implication; as, in either case, the effect is the removal of the bar of the statute, and the restoration of the remedy upon the original demand."

It was said by Chief Judge LeGrand in *Quynn v. Carroll*, 10 Md. 197, and many times repeated by this court, that "the statute of limitations has ever been a fruitful source of doubt and discussion and the decisions in regard to it, both in this country and England, various and contradictory. This being so, whenever it is found that the question presented in the particular case for the time under consideration, has been settled by the adjudications of the appellate court of this state, such adjudications ought to be followed, whatever may have been the decisions elsewhere." See *Beeler v. Clark*, 90 Md. 221.

At the risk of unduly prolonging this opinion, we will, for the purpose of ascertaining by analogies the effect of the language here used, refer to some of the many cases in this court where the language used in them was held to remove the bar raised by the statute of limitations. In this list of cases will be found *Brookes v. Chesley, supra.* The language of the defendant was "that he would settle the account if the plaintiff would take off the interest," and again "that he would settle the account now sued on if the plaintiff

would deduct the charges for interest contained in the account."

In *Carter v. Cross,* 7 Gill, 43, the defendant said "he had not the money, he had loaned it away and never would pay it unless compelled by law."

In *Peterson v. Ellicott,* 9 Md. 52, the proof was that Peterson said "he owed the plaintiff a large sum of money on account of the board and maintenance of his daughter, and that he would pay it as soon as he sold his crops."

In *Keplinger v. Griffith,* 2 G. & J. 296, it was said by the defendant "that he could not pay it as Chevalier had charged him too much and some discount must be taken off and that he must see Mr. Chevalier on the subject."

In *Carroll v. Ridgaway,* 8 Md. 328, the defendant, speaking of the services of the plaintiff in a certain mill, said "that as the mill had turned out unprofitably, he thought the plaintiff would not charge him anything, and that his charge ought not to be more than at the rate at which the plaintiff's brother had charged."

In *Sothoron v. Hardy,* 8 G. & J. 133, the defendant said to the witness "that it was his impression that the money had been paid by his (defendant's) father. That if his father had paid it, he could find, he supposed, the receipt on searching his father's papers; that if he could not find the receipt he would settle it and promised to make a search and inform the witnesses."

In *Poe v. Conway, Admr.,* 2 H. & J. 308, it was said by the defendant "that the plaintiff had performed work for him, but that he had an account at bar, and when the person who was then up the bay would come to town, he would have the business settled."

In *Buffington v. Davis,* 33 Md. 511, in reply to a letter of the plaintiff, the defendant stated that she "regrets that in replying she cannot remit the amount due Mrs. Kelton. But year after year of disastrous failure in the crops, added to heavy losses incident to the late struggle of the South for freedom, had wrecked her fortune."

In *Beeler v. Clark,* 90 Md. 221, a promissory note barred by limitations was presented to the maker with a demand for payment; the maker said: "I cannot do that now as I have two members of my family now to support."

In *Gill v. Donovan, supra,* a witness for plaintiff testified that the deceased shortly before her death said "she had not yet paid plaintiff, she would pay her and that she intended to give her more than wages."

It is said in *Oliver v. Gray, supra,* the leading case on the subject under consideration, that the "act of limitations, according to the received construction, proceeds upon the supposition that from length of time the debt is paid, and was only intended to protect a party where the presumption arising from lapse of time is, either, that the debt has been discharged, or never existed, and not to protect him from a debt acknowledged by himself to be still due and unpaid, with no other excuse for not paying it than the supposed bar created by the act. When, therefore, a party admits the debt to be due, but standing upon the act of limitations alone, in the same breath refuses to pay it, he admits a case, to which the act, according to its spirit and reason does not apply, under the interpretation given to it, and his refusal cannot avail him. But the continuing existence of the debt continues and carries with it the implied assumpsit that the law raises, which is not rebutted by his refusal to pay."

As has been said by this court, the principles announced in *Oliver v. Gray, supra,* may be "more liberal to indulgent creditors than might be deemed wise at this day, when parties in interest are permitted to testify, and those principles are so often made available to defeat the salutary policy of the statute as a statute of repose; but that decision has been too frequently and too emphatically affirmed by our predecessors and by ourselves to permit us now to depart from it." *Beeler v. Clark, supra.*

Applying the principles above stated to the facts of this case, as shown by the evidence offered, which, for the purpose of deciding the question before us, we must assume to be true, we cannot rightfully escape the conclusion that Maurice

L. Knight, at a time not more than two weeks before his death, acknowledged the existence, at that time, of the debt to his brother, the plaintiff. This debt he was to pay when he "sold his business," which he did not sell, but which he held at the time of his death, and, from such fact, it may be inferred, in the absence of evidence to the contrary, that he never paid said debt to the plaintiff. In his statement to the plaintiff, as testified to by Long, Maurice L. Knight said "as soon as he sold his business he intended to pay to him every cent he owed him" and further that "he would settle with him as soon as he sold the business." To remove the bar of the statute, it was not necessary that the acknowledgment or promise should specify any particular amount, nor was the claimant required to "exhibit at the time the evidence, or state the precise nature or amount of the claim, these being facts to be found by the jury according to the evidence in the case." *Turner v. Ellicott,* 9 Md. 52; *Quynn v. Carroll,* 10 Md. 197.

The acknowledgment of the existence of the debt was equivalent to an implied promise to pay such debt, and the acknowledgment was not accompanied by any qualifications or declaration, which if true, would exempt Maurice L. Knight from a moral obligation to discharge it. There was, in our opinion, evidence offered under the plea of limitations sufficient to carry the case to the jury, and therefore the court, we think, erred in granting defendant's prayer.

The first exception to the court's rulings upon the evidence is to the action of the court in striking out the answer of Charles O. Knight to the question as to "What you know of the stone cutting business, especially with the use of pneumatic tools?" If this question was asked, to be followed by other questions, to show witnesses' knowledge of the value of the services rendered by the plaintiff, the evidence sought to be elicited by such question was admissible, as relative to the issues in this case. The witness, however, was afterwards permitted to state to the jury his knowledge of the stone cutting business, as well as the wages paid to stone cutters for such work. The plaintiff was, therefore, not in-

jured by the exclusion of this evidence, even though admissible.

The second, third, and fourth exceptions were to the court's refusal to allow the plaintiff Paul A. Knight to answer the following questions: First. "At the last trial I asked you this question, 'What I want to know particularly about is, during these years during which this claim arises, what was your particular business?'" Second. "Without any reference whatsoever to any dealings you had with Mr. Maurice Knight, I would like to ask you what work you were doing, don't state for whom, but what work were you doing between the years 1906 and 1916?" Third. "Between the years 1906 and 1916 were you continuously working at one employment?"

These questions were objected to upon the ground that the admission of the evidence sought to be introduced thereby would be in violation of section 3 of article 35 of the Code, which forbids a party to a cause to testify in his own behalf in actions or proceedings by or against executors, administrators, etc.

The purpose or object of the testimony sought by the questions objected to is not disclosed, and as they appear to be preliminary questions only, it is difficult to foresee just what evidence is sought by them, but it would seem that the questions were asked leading up to testimony inadmissible under the statute, as relating to the transaction between the parties, and were therefore inadmissible. *Worthington v. Worthington,* 112 Md. 142. If not asked for such purpose, then we cannot see the materiality of these questions; consequently we find no error in the court's rulings thereon, nor do we discover any error in the court's rulings on the fifth and sixth exceptions.

The judgment will be reversed because of the court's error in granting defendant's prayer taking the case from the jury.

*Judgment reversed and new trial awarded,
the appellee to pay the costs.*