CRAWFORD, Administratrix *v.* RICHARDS

[No. 85, October Term, 1950.]

*Decided March 14, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS and MARKELL, JJ.

*Emilie A. Doetsch,* with whom was *George E. Brown, Jr.,* on the brief, for the appellant.

*Charles Z. Heskett* for the appellee.

MARKELL, J., delivered the opinion of the Court.

This is an appeal from a judgment for defendant, on a verdict directed on the ground of limitations, in a suit on four promissory notes of defendant, each payable one year after date, to the order of Millard F. Crawford, plaintiff's intestate, one dated May 1, 1939 for $345, three dated May 1, 1940, for $1,400, $250 and $143 respectively. On the back of each note is endorsed an assignment by Crawford, dated April 2, 1941 (when the 1939 note was overdue), of "this note and interest due" to Elizabeth L. Crawford, and an undated assignment of the note by Miss Crawford "to the estate of Millard F. Crawford, deceased." Crawford died on April 14, 1941. On September 21, 1942 his wife was appointed administratrix of his estate; on November 3, 1943 she died. On September 20, 1945 plaintiff was appointed administratrix *d. b. n.* of his estate. This suit was instituted on September 21, 1945. This case was before us on a former appeal, which did not present the questions now presented. *Crawford v. Richards,* 193 Md. 236, 66 A. 2d 483.

In the instant case, as in the case just decided, No. 99, *Crawford v. Richards,* 197 Md. 284, 79 A. 2d 141, plaintiff contends that defendant cannot set up the defense of limitations because he was an express trustee. The 1915 and 1935 agreements mentioned in our opinion in No. 99 were offered by plaintiff, but the court refused to admit them in evidence. Defendant testified (when called by plaintiff) that the notes in suit were given to *Crawford,* "voluntarily on my part" and "not under this [1915] contract," as a result of certain losses of

*Crawford* on mortgage investments made through defendant. For the reasons stated in our opinion in No. 99 these agreements were not relevant and were properly excluded, and plaintiff's contention as to an express trust is untenable.

Plaintiff admits that, apart from the contention which we have rejected in No. 99 and her claim of a new promise, the 1939 note would be barred by limitations, since limitations began running on May 1, 1940, before the assignment by Crawford, and therefore did not cease running. *Ruff's Adm'r v. Bull,* 7 Har. & J. 14. Plaintiff testifies that the notes were assigned to her only for collection, and she never had any other interest in them. She contends that, as assignee, she had a right to collect them only as agent for her father, that her agency and right to collect was revoked by his death (before maturity of the 1940 notes), and that limitations on the 1940 notes did not begin to run until appointment of the wife as administratrix.

Miss Crawford's legal title to the notes assigned to her, and her right to sue on them in her own name, were not revoked by her father's death. Under the assignment for the purpose of collection she was not a mere agent but took legal title as trustee for her father. *Doxen v. Wagner,* 142 Md. 441, 446, 121 A. 254. An agent to whom, in his own name, a negotiable instrument is by its terms payable, or is transferred, may sue on it in his own name. Restatement, Agency, §§ 364, 365, comment c. Code, art. 13, sec. 14, 70. This right was not terminated by death of Crawford. *Moore v. Hall,* 48 Mich. 143, 11 N. W. 844. In endorsing on the notes an assignment to her father's estate, Miss Crawford apparently recognized that she individually had title and right to sue. Consequently, limitations began to run on the 1940 notes on May 1, 1941 and the notes were barred after May 1, 1944.

Plaintiff also contends that the bar of limitations has been removed by a new promise. Defendant, called by plaintiff, testified that the notes had been signed by

him and had not been paid. Mr. Willis R. Jones, former-
ly counsel for plaintiff, had a conversation with defen-
dant in 1944. He testified that these notes "were dis-
cussed along with several other things. * * *

"Q. Did he offer to pay them? A. Mr. Richards was
without funds, as I recall it, to pay anything, and we
approached all of these losses from the standpoint of
trying to see what we could salvage from the things
that were tangible and available. * * * We discussed
four notes that were involved in suit here; they were
the notes, as I said, they were given to cover certain
losses and he had no objection if we could get together
on other things, to executing renewal notes. He had
no money to pay the notes. * * *

"The Court: He wanted a general settlement of every-
thing? A. That is right, your Honor, there were certain
matters that we had discussed separately, but he wanted
to work out some adjustment of the whole thing; * * *.
* * * There wasn't any understanding as to an isolated
thing. He was willing to execute several renewal notes
which he had given to cover losses. He claimed he wasn't
responsible for it. I don't understand that he was willing
to execute these notes and forget about other things.
It was my understanding that Mr. Richards was dis-
posed to settle the whole thing. I had certainly no
specific information from him that he would do that
and let the other chips fall where they may. I didn't
understand that. * * * Cross Examination. * * *

"Q. Was there any doubt in your mind * * * at the
conclusion of this conference with Richards that any
proposition or suggestions he did make to you were
based upon the theory of compromising all of these diffi-
culties? A. None whatever, and moreover that had
been expressed, to go back and get an express authority
before I could make a proposition to you. I think I told
you that I had to go back and talk over with my client
the facts before I could make any deal with you; that is
my recollection." No offer of compromise was made by
defendant or his counsel.

It is not necessary to review the many cases in this court on the sufficiency of an alleged new promise to remove the bar of limitations. Many of the earlier cases are reviewed in *Brown v. Hebb,* 167 Md. 535, 175 A. 602, 97 A. L. R. 366, or *Knight v. Knight,* 155 Md. 243, 141 A. 706. "In this state, as in England, there must be shown to exist one of three things to take a case of the operation of the statute of limitations: First, an admission or acknowledgment by the debtor of a subsisting debt, from which a promise to pay may be implied; secondly, an unconditional promise to pay the debt; or, thirdly a conditional promise to pay the debt, and evidence which shows that the condition has been performed or gratified." *Wilmer v. Gaither,* 68 Md. 342, 345, 12 A. 8, 10, quoted in *Taylor v. Commissioners,* 132 Md. 412, 420, 104 A. 475, and *Brown v. Hebb,* 167 Md. 535, 542, 175 A. 602, 605, 97 A. L. R. 366. "An acknowledgment, to take the case out of the act of limitations, must be of a present subsisting debt, unaccompanied by any qualification or declarations, which, if true, would exempt the defendant from a moral oligation to pay." *Oliver v. Gray,* 1 Har. & G. 204, 216-217; quoted in *Knight v. Knight, supra,* 155 Md. 246-247, 141 A. 706, and in *Brown v. Hebb, supra,* 167 Md. 542, 175 A. 602. An acknowledgment may be sufficient though made in an effort to compromise, if it "amounted to a clear, distinct, and unqualified admission of a subsisting indebtedness". *Owings v. Dayhoff,* 159 Md. 403, 415, 151 A. 240, 245; *Brown v. Hebb, supra,* 167 Md. 541, 175 A. 602. Defendant's testimony that the notes had been signed by him and had not been paid, and defendant's statements to Mr. Jones, were qualified by his statements that he gave the notes for losses sustained by Crawford, for which he did not consider himself responsible or obligated. *Mitchell v. Sellman,* 5 Md. 376, 386. His expressions of willingness to renew the notes were not an unconditional promise to pay, but were expressly conditioned on a complete compromise, which was never reached.

*Judgment affirmed, with costs.*